**In the Matter of
HUGHES–BECHTOL, INC., Debtor.**

**HUGHES–BECHTOL, INC., Plaintiff,**

**v.**

**AIR ENTERPRISES, INC., Defendant.**

**AIR ENTERPRISES, INC., Plaintiff,**

**v.**

**OHIO FARMERS INSURANCE
COMPANY, Defendant.**

**Bankruptcy No. 3–88–02492.
Adv. No. 3–89–0161.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Oct. 25, 1989.

Bruce A. Buren, Dayton, Ohio.

Sally Conley Lux, of counsel, Akron, Ohio, for Air Enterprises.

Thomas R. Noland, Dayton, Ohio, for Hughes–Bechtol, Inc.

Dennis Liston, Columbus, Ohio, for Ohio Farmers.

Wayne Dawson, Dayton, Ohio, for Soc. Bank.

John P. Gartland, Michael W. Currie, Columbus, Ohio.

John Paul Rieser, Dayton, Ohio, for Unsecured Creditors Committee.

David C. Greer, Dayton, Ohio.

John Ducker, Dayton, Ohio, for IPS Robertshaw.

THOMAS F. WALDRON, Bankruptcy Judge.

## I. PROCEDURAL BACKGROUND

This adversary proceeding is before the court on an Amended Application For Removal Pursuant To Bankruptcy Rule 9027 Of Consolidated Cases (Doc. 3) filed by Hughes–Bechtol, Inc. seeking to remove various State Court actions, pending in the Montgomery County Court of Common Pleas, which involve claims and counterclaims arising out of labor and materials supplied by Air Enterprises, Inc. (Air) to Hughes–Bechtol, Inc. (Hughes–Bechtol) in connection with the construction of certain facilities (the project) at Wright–Patterson Air Force Base. A brief identification of the entities involved in this adversary proceeding and the procedural history of the State Court actions and the filings in this adversary proceeding will aid in understanding this report and decision.

Hughes–Bechtol, the debtor-in-possession in this pending Chapter 11 reorganization case, is a construction company engaged in commercial and governmental construction projects. Hughes–Bechtol is often in the position of a subcontractor to the general contractor on construction projects; additionally, Hughes–Bechtol frequently employs a number of other entities as subcontractors. Butt and Head, Inc. (Butt) was the general contractor on the project. Hughes–Bechtol was a subcontractor of Butt. Federal Insurance Co. provided a performance bond to Butt in connection with the project. Ohio Farmer's Insurance Co. (Ohio Farmers) provided a performance bond to Hughes–Bechtol in connection with the project. Air was a subcontractor of Hughes–Bechtol in connection with the project.

Hughes–Bechtol, prepetition, had filed a State Court action (Case No. 3–87–3682) against the general contractor, Butt, which involved a third-party complaint against Air. Air had filed a counterclaim in that action; however, all of the parties in that action (Case No. 87–3682) have filed dismissals of their claims. Accordingly, that case, which is not presently pending in the state court, is, likewise, not a subject of removal in this adversary proceeding.

Hughes–Bechtol had also filed a separate State Court action against Air and Air had filed a counterclaim in that action against Hughes–Bechtol and demanded a trial by jury. (Case No. 87–3793). Wright Patterson Air Force Base, where the project is located, is situated in two (2) Ohio counties, Montgomery and Greene, and, accordingly, Air Enterprises commenced two (2) identical actions involving the project, one in the Montgomery County Court of Common Pleas under Case No. 88–2879 and one in the Greene County Court of Common Pleas

under Case No. 88–CV–326. In each of these actions, Air demanded trial by jury. These two actions (88–2879 and 88–CV–326) named Ohio Farmers as a defendant, but did not name Hughes–Bechtol as a defendant. The Greene County State Court action (88–CV–326) was transferred to Montgomery County and thereafter consolidated with the two (2) pending Montgomery County Court of Common Pleas actions (87–3793 and 88–2879) for purposes of coordinating discovery and conducting pretrial hearings.

In this adversary proceeding, Air filed Air Enterprises, Inc.'s Memorandum In Opposition To Hughes–Bechtol's Removal Application And In Support Of Air Enterprise's Motions For Abstention And Remand (Doc. 6). The court entered an Order Requiring Filing Of Motions Pursuant To 28 U.S.C. § 157(d), Setting Oral Arguments On Pending Motions And Determination Of Further Proceedings In This Adversary And Pretrial Conference (Doc. 7). Thereafter, Hughes–Bechtol filed a Motion To Withdraw Reference And Consolidate Actions And Response Of Debtor–In–Possession To Motion Of Air Enterprises, Inc. For Remand Or Abstention (Doc. 8) and Air filed Reply Of Air Enterprises, Inc. To Response To Motion For Remand And Abstention And Response Of Air Enterprises, Inc. To Motion To Withdraw The Reference (Doc. 10).

## II. ISSUES PRESENTED

Although all of the issues raised in this adversary proceeding (removal, remand, abstention, withdrawal and jury trial) are interrelated, this court's consideration of these issues is governed by specific federal statutes which control the form of the court's determination. With regard to the removal, remand and abstention issues this court is required to file a report and recommendation for final determination by the district court. With regard to whether a proceeding is core or non-core, or whether a party is entitled to a jury trial, this court is authorized to enter final orders. With regard to Hughes–Bechtol's Motion For Withdrawal, that matter is committed exclusively to decision by the district court.

## III. DECISION

### A. Jurisdiction Determination

The interrelated issues presented in this proceeding require this court to examine the existing statutes governing the jurisdiction of the United States District Court in bankruptcy cases and proceedings and the exercise of that jurisdiction by United States Bankruptcy Judges. This court has previously explored these issues in three decisions, which contain principles relevant in the determination of this adversary proceeding: *Matter of Commercial Heat Treating Of Dayton, Inc.*, 80 B.R. 880 (Bankr.S.D.Ohio 1987); *Matter of Walton*, Chp. 7 Case No. 3–88–00747 (Bankr.S.D. Ohio 1988) (Lexis, 1988 Bankr. Lexis 2539) (Abstention) (hereinafter *Walton*-abstention); *Matter of Walton*, 104 B.R. 861 (Bankr.S.D.Ohio 1988) (Core proceeding) (hereinafter *Walton*-core).

As this court has noted,

A recognition of the difference between the existence of jurisdiction and the exercise of jurisdiction in bankruptcy cases and proceedings is fundamental to an understanding and resolution of the issues presented in this proceeding and may provide guidance for future proceedings. The existence of jurisdiction in a bankruptcy case or proceeding rests on a broad and complete constitutionally authorized direct grant of authority by Congress to the district courts over all matters and proceedings that are connected to a bankruptcy case. The exercise of jurisdiction by a bankruptcy court in a bankruptcy case or proceeding rests on a limited and circumscribed reference of derivative authority from the district court to the bankruptcy court over most, but not all, proceedings that are connected to a bankruptcy case.

This broad grant of authority establishing the existence of jurisdiction in the district court has been recognized repeatedly in various circuit opinions. *In re Arkansas Communities, Inc.*, 827 F.2d 1219 (8th Cir.1987), *Matter of Wood*, 825 F.2d 90 (5th Cir.1987), *In re Mankin*,

823 F.2d 1296 (9th Cir.1987), *In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir.1987).

The Sixth Circuit decisions which specifically recognize this broad grant of authority include *In re Southern Indus. v. Banking Corp.*, 809 F.2d 329 (6th Cir. 1987); *In re Salem Mortg. Co.*, 783 F.2d 626 (6th Cir.1986); and *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254 (6th Cir.1983) (which upheld the constitutionality of the Interim rule adopted following Northern Pipeline)....

*Commercial Heat Treating*, 80 B.R. at 884–885.

The court notes that recently the Sixth Circuit abrogated its prior rule announced in *In re Washington*, 623 F.2d 1169 (6th Cir.1980), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 826 (1981), and recognized the bankruptcy court's superior jurisdiction over a debtor's property even though a state court had already exercised *in rem* jurisdiction over the property. The Sixth Circuit in *In re White*, 851 F.2d 170, 172–173 (6th Cir.1988) noted,

> Our decision to award superior jurisdiction to the state court was based on "traditional notions of comity, which require that, as between state and federal courts, jurisdiction must be yielded to the court that first acquires jurisdiction over the property." 623 F.2d at 1172. We traced this holding to a broader doctrine which advocates granting exclusive jurisdiction to the first court asserting *in rem* jurisdiction, when both courts base jurisdiction on control of the same property. *See, e.g. Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939).
>
> Despite the federalism interests served by such a rule, we agree with debtor's argument that the 1978 and 1984 changes to the Bankruptcy Code were primarily aimed at getting away from the kind of *in rem* jurisdiction set out in *Princess· Lida* and *In re Washington*. The jurisdiction granted in 28 U.S.C. § 1334(d) indicates a conscious effort by Congress to grant the bankruptcy court special jurisdiction and to preclude the

type of jurisdictional disputes evidenced in those cases. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 445, *reprinted in 1978 U.S. Code Cong. & Admin. News* 5787, 5963, 6400; 1 L. King, *Collier on Bankruptcy* § 3.01 p. 3–30 (15th ed. 1983).

> ....

> The rule in *In re Washington* should therefore no · longer apply to give the state court jurisdiction over property simply because it may have been the first court to exercise control over the property.

The Sixth Circuit previously noted that "[a]lthough situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional intent in adopting the new bankruptcy laws." *In re Salem Mortg. Co.*, 783 F.2d 626, 634 (6th Cir.1986).

Accordingly, this court reviews the application to remove to determine whether the outcome of this adversary proceeding involving the removed State Court actions could conceivably have an impact upon the bankruptcy case of Hughes–Bechtol. *Salem*, 783 F.2d at 634.

■ The court notes that both Air Enterprises and Ohio Farmers have filed proofs of claim in this bankruptcy case asserting claims against the estate of Hughes–Bechtol (Proof of claim for one hundred eighty-two thousand, one hundred sixty-four dollars and forty-nine cents ($182,-164.49) filed November 7, 1989 by Air Enterprises, Inc. and proof of claim for three hundred ninety-eight thousand, eight hundred eighty-three dollars and eighteen cents ($398,883.18) liquidated, and twenty-five million, four hundred forty-six thousand, one hundred eighty-seven dollars and twenty-six cents ($25,446,187.26) contingent, filed November 8, 1988 by Ohio Farmers.) Further, as the State Court actions make clear, Hughes–Bechtol alleges the defense of setoff and asserts its own claims of damages against Air Enterprises. Additionally, pursuant to the provisions of

the performance bond, Ohio Farmers occupies a surety relationship with Hughes–Bechtol. The result of these legal claims and relationships is that the resolution of the state court proceeding would establish set-off rights among the parties pursuant to 11 U.S.C. § 553, subrogation rights pursuant to 11 U.S.C. § 509 and lien rights pursuant to 11 U.S.C. § 506, both in the state court proceeding and, under preclusion principles, in this bankruptcy case. *See generally, Shafer v. Wintrow (Matter of Wintrow)*, 57 B.R. 695, 698–701 (Bankr.S.D. Ohio 1986). The state action would directly impact, in whole or in part, the above parties' claims to a share in the distribution of the assets of Hughes–Bechtol's estate and result in the restructuring of the debtor-creditor relationship among these parties. Determinations such as these are at the "core of the federal bankruptcy power." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982).

Accordingly, the court concludes that jurisdiction over the issues presented in this adversary proceeding exists in the United States District Court and has been properly referred to this bankruptcy court by the Standing Order Of Reference entered in this district on July 10, 1984. *Commercial Heat Treating*, 80 B.R. at 883.

The court having determined that jurisdiction concerning the issues raised in these proceedings exists, the court examines the more complicated questions concerning the manner in which this existing jurisdiction is to be exercised by the bankruptcy court.

### B. Core Determination

Reviewed from a narrow and procedural prospective only, the State Court action could be determined to be a non-core proceeding, *Commercial Heat Treating* at 888; however, viewed from a substantive and realistic perspective, the State Court action is determined to be a core proceeding. As this court has noted:

Among the obvious reasons explaining the struggle by various courts to determine whether or not a specific proceeding is a core or a non-core proceeding is the absence of a definition of a core or a non-core proceeding. Neither *Northern Pipeline* nor BAFJA contains definitions of a core or a non-core proceeding. Both *Northern Pipeline* and BAFJA merely provide examples of core or non-core proceedings. In *Commercial Heat Treating*, 80 B.R. at 888, this court noted,

An examination of the characteristics necessary for a non-core proceeding will be helpful since the category of non-core proceedings is an extremely limited category and all proceedings which do not contain the required characteristics of non-core will be determined core.

. . . .

A non-core proceeding is identified by the following characteristics—a proceeding filed in the bankruptcy court alleging a cause of action that:

(1) is not *specifically* identified as a core proceeding under § 157(b)(2)(B) through (N),

(2) existed prior to the filing of the bankruptcy case,

(3) would continue to exist independent of the provisions of Title 11, and,

(4) in which the parties rights, obligations or both are not significantly affected as a result of the filing of the bankruptcy case.

The first characteristic of non-core proceeding is that the proceeding is not specifically identified as a core proceeding under Section 157(b)(2)(B) through (N). If a proceeding can be identified as one of the specific proceedings in the non-exclusive listing of core proceedings contained in 28 U.S.C. § 157(b)(2)(B) through (N) the court's examination of the issue can be concluded and the proceeding determined a core proceeding.

*Walton*-core 104 B.R. at 864.

In this removed proceeding, the court notes that in addition to the core designations under 28 U.S.C. § 157(b)(2)(A)— matters concerning the administration of the estate and (O)—other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-credi-

tor relationship, these removed State Court actions specifically involve issues under (B)—the allowance or disallowance of claims against the estate, (C)—counterclaims by the estate against persons filing claims against the estate and (K) determinations of the validity, extent or priority of liens.

As the court noted in *Consolidated Lewis Investment Corp., Ltd. Partnership v. Hibernia Nat'l Bank (In re Consol. Lewis Inv. Corp., Ltd. Partnership)*, 78 B.R. 469, 477 (Bankr.M.D.La.1987),

> In addition, I would conclude that each of the issues presented is a core proceeding. 28 U.S.C. § 157(b)(2) states that core matters include, but are not limited to, "allowance or disallowance of claims against the estate, counterclaims by the estate against persons filing claims against the estate, determinations of the validity, extent, or priority of liens, [and] other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship." There is no serious question but that the Debtor is asserting a counterclaim against a person filing a claim against the estate; there is no serious question, regardless of the terms in which the state law petition is phrased, that the ultimate issue is the determination of the claims by these creditors against the estate and the validity of their liens against property of the estate. It is hard to imagine an issue that is more at the core of the bankruptcy process. The statute, therefore, classifies the proceeding as core.

The issues necessary to a resolution of the state court proceeding, even though nominally restricted to Air and Ohio Farmers, do not "resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate" rather they resemble "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy *res.*" *Granfinanciera, S.A. v. Nordberg*, —— U.S. ——, 109 S.Ct. 2782, 2798, 106 L.Ed.2d 26 (1989). Accordingly, the court concludes that the State Court actions which have been removed to this court are core proceedings.

### C. Removal Determination

Removal in bankruptcy cases and proceedings is presently governed by 28 U.S.C. § 1452 which provides:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise.

Removal is also the subject of Bankruptcy Rule (Bankr.R.) 9027 particularly section (e) Remand, which provides:

(e) **Remand.** A motion for remand of the removed claim or cause of action shall be filed with the clerk and served on the parties to the removed claim or cause of action. Unless the district court orders otherwise, a motion for remand shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion. The clerk shall serve forthwith a copy of the report and recommendation on the parties. Within 10 days of being served with a copy of the report and recommendation, a party may serve and file with the clerk objections prepared in the manner provided in Rule 9033(b). Review by the district court of the report and recommendation shall be governed by Rule 9033.

The Sixth Circuit has made clear that its analysis of the previous removal statute, 28 U.S.C. § 1478 as modified by the interim emergency rules, is equally applicable to the present removal statute, 28 U.S.C. § 1452. *Boone Coal And Timber Co. v.*

*Polan*, 787 F.2d 1056, 1059 n. 3 (6th Cir. 1986). The present removal statute replaced a similarly worded removal statute; however, the only significant change in the language between the two statutes is the substitution in the present statute of the "district" court for the "bankruptcy" court as the designated forum for removal.

The federal removal statute plays a significant role in bankruptcy legislation as a component of the congressionally enacted and judicially approved broad grant of jurisdiction which contemplates that federal courts will exercise jurisdiction over all litigation having a significant connection with bankruptcy. *See generally*, Gibson, *Removal of Claims Related to Bankruptcy Cases: What is a "Claim or Cause of Action"?* 34 UCLA L. Rev. 1 (1986). The Order of Reference entered in this district pursuant to 28 U.S.C. § 157(a) requires the bankruptcy court to be the initial federal forum to consider the issue of removal. Bankr.R. 9027(f); *Adams v. Sidney Schafer & Associates (In re Adams)*, 809 F.2d 1187, 1189 (5th Cir.1987).

█ In the particular circumstances of the State Court actions that are the subject of this proceeding, the fact that Hughes–Bechtol is not presently a party in two of these State Court actions does not prevent removal of those actions. As the court stated in *Dak Manufacturing v. Coordinated Components (Matter of Dak Manufacturing Corp.)*, 73 B.R. 917, 920 (Bankr. D.N.J.1987), concerning the removal of an action against guarantors of a debtor's obligation:

A line of cases, including a decision by the Court of Appeals of this Circuit, have recognized that an action against guarantors of a debtor's obligation is "related to" the bankruptcy case so as to confer jurisdiction for removal of same to this Court. *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984); *In re Brentano's, Inc.* 27 B.R. 90 (Bankr.S.D.N.Y.1983); *In re Johnie T. Patton, Inc.*, 12 B.R. 470 (Bankr.D.Nev.1981); *In re Lucasa International Ltd.*, 6 B.R. 717 (Bankr.S.D.N.Y.1980); *In re Brothers Coal Co.*, 6 B.R.

567 (Bankr.W.D.Va.1980), (all involving guarantors of debtor's obligations).

Other courts that have considered this issue have reached the same conclusion. Both *Aetna Casualty & Surety v. Dauria, (Matter of Pine Associates, Inc.)*, 40 B.R. 683 (Bankr.D.Conn.1984) and *Foursquare Properties, Joint Venture I v. Akins Keyboard Sales, Inc. (In re Akins)*, 54 B.R. 529 (Bankr.E.D.Wis.1985) hold that, even though the removed action did not involve the debtor as a named party, removal to the bankruptcy court was proper. In *Matter of Pine Associates, Inc.*, 40 B.R. at 686, the court noted: "Aetna argues that because debtor is not a *named* party to the state court proceeding, debtor's removal application is fatally defective." The *Pine* court cited *Frankford Trust Co. v. Allanoff (In re Dublin Properties)*, 20 B.R. 616, 621 (Bankr.E.D.Pa.1982), *rev'd as to contempt order*, 29 B.R. 407 (E.D.Pa.1983) which held the following: "To hold that the debtor could not remove those proceedings to this court because it was not technically a party to those proceedings would be to exalt form over substance." To the same effect, the court in *In re Akins*, 54 B.R. at 530 stated: "The case before this court is a related case under 28 U.S.C. § 1334(b), so that this court has jurisdiction, *Zweygardt v. Colorado Nat'l Bk.*, 52 B.R. 229, 13 BCD 459 (Bankr.D. CO 1985), and its removal by a non-party, the debtor in the Michigan bankruptcy, is not improper. *In re Wesco Products Co.*, 19 B.R. 908 (Bankr.N.D. IL ED 1982)."

Accordingly, the Court recommends that the district court enter an order finding the State Court actions to be properly removed to this court.

D. Remand, Abstention Determinations

█ Having determined the State Court actions to be core proceedings properly removed to this court, the court examines whether remand of this proceeding or abstention from hearing this proceeding is appropriate. This court believes that, when the State Court Actions are viewed from a substantive and realistic perspective, it is clear that even if the State Court actions are nominally limited to a dispute

proceedings. *Huffman v. Perkinson (In re Harbour)*, 60 B.R. 370, 371 (W.D.Va. 1985); *Allegheny, Inc. v. Laniado Wholesale Co. (In re Allegheny, Inc.)*, 68 B.R. 183, 192 (Bankr.W.D.Pa.1986); *Accord: Tidwell Industries, Inc. v. Delmarva Homes, Inc., (In re Tidwell Industries)*, 87 B.R. 345, 347–350 (Bankr.E.D.Pa.1988).

The court has determined this matter to be a core proceeding and, absent extraordinary circumstances, this court's duty pursuant to federal law and the specific directive contained in the Standing Order Of Reference entered in this district requires this court to determine matters properly before it, particularly core proceedings.

Accordingly, the court concludes that mandatory abstention is not required in this proceeding. Although this court recognizes it has no greater expertise than the state court in determining the underlying contract issues in dispute among the parties, this court recognizes it does have greater experience than the State Court in applying various provisions of the Bankruptcy Code, including 11 U.S.C. §§ 506, 509 & 553, all of which are presented as part of these removed actions. Further, the court finds that since the entire State Court action has been removed to this court, the state court will not be burdened with a partially pending unresolved action on its docket, nor will the parties be subjected to inconsistent results, nor multiple appearances before separate forums.

Additionally, since Ohio Farmers and Air have filed proofs of claim against the debtor's estate, it is clear that the resolution of this proceeding will have a direct impact on the further administration of this bankruptcy case, not only in the confirmation process of any plan proposed by the debtor, but also in any proposed classification and distribution concerning Air's claims.

Finally, although this decision does not adopt the position urged by Air, it must be recognized that Air is not the only creditor affected by Hughes–Bechtol's Bankruptcy. Among the reasons prompting federal bankruptcy legislation is a determination by Congress that the public interest is not served by the piecemeal dismantling and distribution of a debtor's estate by creditors, including those creditors who are swiftest in the race to the courthouse. Although it is not an intention of bankruptcy legislation to punish the diligent and reward the dilatory, it is consistent with bankruptcy legislation to provide a single forum for the determination of "creditors hierarchically ordered claims to a pro rata share of the bankruptcy *res.*" *Granfinanciera*, —— U.S. at ——, 109 S.Ct. at 2798.

This court recognizes that this proceeding presents difficult questions concerning permissive abstention, particularly in light of the advanced stages of the pending State Court actions against Ohio Farmers. Further, this court recognizes that when the district court reviews this court's report and recommendation and reaches its independant decision concerning Hughes–Bechtol's motion to withdraw the reference and consolidate these removal actions with other removal actions involving Hughes–Bechtol and Ohio Farmers, the district court could well reach a conclusion contrary to this court's recommendation on this issue; nevertheless, upon consideration of the information presently available to this court, the court concludes that permissive abstention is not appropriate in this proceeding.

The court wishes to stress that this report and decision does not reflect, in any sense, a merit determination of any party's claims or defenses against any other party. Such determinations must wait for a future day. This decision is solely addressed to the procedural concerns that are a necessary predicate to the merit determinations of any party's claims and defenses. *Gorse v. Long Neck Ltd. (Matter of Long Neck, Ltd.)*, 20 C.B.C.2d 1461, 1464 (Bankr.D.Del. 1988).

A copy of this report and decision will be presented with the recommendation that the United States District Court enter an order denying any motions for remand and abstention and retaining jurisdiction in the federal court.

### E. Jury Demand Determination

The court now turns to the issues presented by Air's jury demands in the

removed State Court actions. The issues surrounding jury trials in bankruptcy court proceedings have been the subject of substantial comment, *See generally*, Gibson, *Jury Trials In Bankruptcy: Obeying the Commands of Article III in the Seventh Amendment*, 72 Minn.L.Rev. 967 (1988) (hereinafter Gibson); Warner, *Katchen Up in Bankruptcy: The New Jury Trial Right*, 63 Am.Bankr.L.J. 1 (1989) (hereinafter Warner); Cyr, *The Right to Trial by Jury in Bankruptcy: Which Judge is to Preside*? 63 Am.Bankr.L.J. 53 (1989); (hereinafter Cyr); Kaiser, *The Jury is Still Out*, 8 Norton Bankr.L.Advis. 1 (August 1989) and recently the subject of a decision by the United States Supreme Court (*Granfinanciera*). Although the Supreme Court's decision will certainly be the subject of more extended and sophisticated analyses by other courts and commentators, for purposes of this decision, among *Granfinanciera's* more significant determinations is the holding that the right to trial by jury contained in the Seventh Amendment applies in bankruptcy proceedings, including core proceedings. As the Supreme Court stated,

> We do not decide today whether the current jury trial provision—28 U.S.C. § 1411 (1982 ed., Supp. IV)—permits bankruptcy courts to conduct jury trials in fraudulent conveyance actions like the one respondent initiated. Nor do we express any view as to whether the Seventh Amendment or Article III allows jury trials in such actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts pursuant to the 1984 Amendments. We leave those issues for future decisions. We do hold, however, that whatever the answers to these questions, the Seventh Amendment entitles petitioners to the jury trial they requested.

*Granfinanciera*, —— U.S. at ——, 109 S.Ct. at 2802 (footnotes omitted).

■ In order to resolve Air's jury trial demands in the removed State Court actions, this court employs a four part analysis: (1) Does the proceeding present a timely filed jury demand? (2) If a timely filed jury demand has been presented, is the proceeding one in which the party requesting a jury trial is entitled to a trial by jury? (3) If a timely jury demand has been presented, and the proceeding is one in which the party requesting a jury trial is entitled to a trial by jury, has the party requesting trial by jury submitted a claim in the bankruptcy case or otherwise created a proceeding in which the bankruptcy court is authorized to determine the issues without a jury? (4) If a timely jury demand has been presented, and the proceeding is one in which a party requesting a jury trial is entitled to a trial by jury, and the party requesting a jury trial has not submitted a claim in the bankruptcy case or otherwise created a proceeding in which the bankruptcy court is authorized to determine all issues without a jury, is the bankruptcy court authorized to conduct a jury trial?

### 1. *statutory and constitutional authority*

In order to begin this analysis, it is helpful to examine the basis for a jury trial in a federal bankruptcy proceeding. Although there is a specific statute titled *Jury Trials* (28 U.S.C. § 1411), it is necessary to recognize that the language of this statute is ambiguous and has produced considerable confusion among courts that have attempted to interpret and apply it.

As the Supreme Court noted,

The current statutory provision for jury trials in bankruptcy proceedings—28 U.S.C. § 1411 (1982 ed., Supp. IV), enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Amendments), Pub.L. 98–353, 98 Stat. 333–is notoriously ambiguous. Section 1411(a) provides: "[T]his chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim." Although this section might suggest that jury trials are available only in personal injury and wrongful death actions, that conclusion is debatable. Section 1411(b) provides that "[t]he

district court may order the issues arising [in connection with involuntary bankruptcy petitions] to be tried without a jury," suggesting that the court lacks similar discretion to deny jury trials on at least some issues presented in connection with voluntary petitions. The confused legislative history of these provisions has further puzzled commentators. *See,* e.g. Gibson, Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment, 72 Minn.L. Rev. 967, 989–996 (1988) (hereinafter Gibson); Note, the Bankruptcy Amendments and Federal Judgeship Act of 1984: The Impact on the Right of Jury Trial in Bankruptcy Court, 16 Tex.Tech.L.Rev. 535, 543–546 (1985). Whatever the proper construction of § 1411, petitioners concede that this section does not entitle them to a jury trial. Section 122(b) of the 1984 Amendments, 98 Stat. 346, bars applications of § 1411 to "cases under title 11 of the United States Code that are pending on the date of enactment of this Act or to proceedings arising in or related to such cases," and Chase & Sanborn's petition for reorganization was pending on that date. Nor does § 1411's predecessor—28 U.S.C. § 1480(a), which stated that "this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979"—seem to afford petitioners a statutory basis for their claim. As they recognize, § 1480 was apparently repealed by the 1984 Amendments. *See* Gibson 989, and n. 96; King, Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984, 38 Vand.L. Rev. 675, 703, and n. 79 (1985); Brief for Respondent 5, n. 11. Petitioners therefore appear correct in concluding that "absent any specific legislation in force providing jury trials for cases filed before July 10, 1984, but tried afterwards, [their] right to jury trial in this proceeding must necessarily be predicated entirely on the Seventh Amendment."

Brief for Petitioners 33, n. 7. See also, Brief for Respondent 10, and n. 15. *Granfinanciera,* —— U.S. at ——, 109 S.Ct. at 2789–2790 n. 3.

Additionally, Bankruptcy Rule 9015 (Appendix I), which had governed the procedural aspects of jury trials, has been abrogated. The 1987 Advisory Committee note states:

Former section 1480 of title 28 preserved a right to trial by jury in any case or proceeding under title 11 in which jury trial was provided by statute. Rule 9015 provided the procedure for jury trials in bankruptcy courts. Section 1480 was repealed. Section 1411, added by the 1984 amendments, affords a jury trial only for personal injury or wrongful death claims, which 28 U.S.C. § 157(b)(5) requires be tried in the district court. Nevertheless, Rule 9015 has been cited as conferring a right to jury trial in other matters before bankruptcy judges. In light of the clear mandate of 28 U.S.C. § 2075 that the "rules shall not abridge, enlarge, or modify any substantive right," Rule 9015 is abrogated. In the event the courts of appeals or the Supreme Court define a right to jury trial in any bankruptcy matters, a local rule in substantially the form of Rule 9015 can be adopted pending amendment of these rules.

This court notes that the Local Rules of United States Bankruptcy Court for the Southern District of Ohio (effective May 1, 1989) do not presently contain a rule "in substantially the form of Rule 9015."

The Supreme Court stated in *Granfinanciera:*

"Petitioners rest their claim to a jury trial on the Seventh Amendment alone. The Seventh Amendment provides: In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." We have consistently interpreted the phrase, "Suits at common law" to refer to "suits in which *legal* rights were to be ascertained and determined, in contra-distinction to those where equitable rights alone were recognized, and equitable remedies were ad-

ministered." *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830).

*Granfinanciera*, —— U.S. at ——, 109 S.Ct. at 2789–2790 (footnote omitted).

Accordingly, although there may be both a federal statutory basis (28 U.S.C. § 1411) and a constitutional basis (the Seventh Amendment) for jury trials in bankruptcy courts, in this proceeding the court determines Air's jury demands rest on the Seventh Amendment.

2. *the timeliness of the jury demand*

■ As previously noted, former Bankruptcy Rule 9015, which has been abrogated, provided for several significant procedural issues connected with jury trials. *See generally*, Sabino, *Jury Trials in the Bankruptcy Court: The Controversy Ends*, 93 Com.L.J. 228 (1988). Although the determination of whether a bankruptcy judge may preside at a jury trial remains subject to considerable debate, and may require future specific legislation from Congress and ultimately resolution by the United States Supreme Court, this court is persuaded that preliminary procedural considerations relating to jury trials are properly determined by the bankruptcy court. 28 U.S.C. § 1334(b); 28 U.S.C. § 157(b)(2); 28 U.S.C. § 1411; Standing Order Of Reference entered in this district on July 30, 1984.

This court notes that although the Preliminary Draft of the Proposed Amendments to the Bankruptcy Rules (Committee on Rules of Practice and Procedure of the Judicial Conference of the United States Aug. 1989) continues to leave Rule 9015 abrogated, and the existing Local Rules for the United States Bankruptcy Court for the Southern District of Ohio make no provision for procedures governing jury trials, as this proceeding make clear, the issues surrounding jury trial demands in this court require the court to provide guidance concerning the issue. *See, Leonard v. Wessel, (In re Jackson)*, 90 B.R. 126, 132 (Bankr.E.D.Pa.1988). Accordingly, in order to provide all litigants who appear in this court with guidelines concerning the procedural issues connected with jury trial demands in bankruptcy court proceedings, the court will incorporate into future orders the substance of abrogated Bankruptcy Rule 9015 (Fed.R.Civ.P. 38, 39, 40). The provisions of the abrogated Bankruptcy Rule 9015 will be incorporated into this court's customary Order Requiring Filing Of Preliminary Pretrial Statement And Motions Pursuant To 28 U.S.C. § 157 and 28 U.S.C. § 1334.

In connection with this proceeding, the court finds that Air had previously filed its jury demands in the pending State Court actions and these actions were scheduled for trial by jury. The court determines that Air's demands for jury trial are timely filed for purposes of this proceeding. Fed. R.Civ.P. 81(c).

3. *right to jury trial*

Having concluded that Air's jury demands are timely filed, the court examines the question of whether Air is entitled to a jury trial.

As the United States Supreme Court noted:

Although "the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791," the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty. *Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974).

The form of our analysis is familiar. "First, we compare the statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417–418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citations omitted). The second stage of this analysis is more important than the first. *Id.*, at 421, 107 S.Ct. at 1837.

*Granfinanciera*, —— U.S. at ——, 109 S.Ct. at 2790.

It is clear that the claims asserted by the parties in this proceeding, whether they are Hughes–Bechtol's demands, set-offs and counterclaims against Air Enterprises or Air Enterprises' demands and counterclaims against Hughes–Bechtol, all of which form the basis for any liability on behalf of Ohio Farmers in connection with the bond it issued, seek only money damages. The Supreme Court noted that the plurality in *Northern Pipeline* "emphasized that state-law causes of action for breach of contract or warranty are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings." *Granfinanciera*, — U.S. at —, 109 S.Ct. 2797–2798.

> (" '[W]here an action is simply for the recovery ... of a money judgment, the action is one at law' "), quoting *Whitehead v. Shattuck*, 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962) ("Petitioner's contention ... is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. We agree with that contention"); *Gaines v. Miller*, 111 U.S. 395, 397–398, 4 S.Ct. 426, 427, 28 L.Ed. 466 (1884) ("Whenever one person has in his hands money equitably belonging to another, that other person may recover it by assumpsit for money had and received. The remedy at law is adequate and complete") (citations omitted).

*Granfinanciera*, — U.S. at —, 109 S.Ct. at 2793.

Accordingly, the court concludes that the actions brought and the remedies sought in the underlying State Court actions constitute legal actions in which the party asserting a jury demand, Air, has a right to trial by jury.

### 4. trial in bankruptcy court without a jury

This court, having determined that a jury demand has been timely filed by a party entitled to a trial by jury, next considers whether the party requesting trial by jury

has submitted a claim in the bankruptcy case or otherwise created a proceeding in which the bankruptcy court is authorized to determine the issues without a jury. At this point, a limited discussion of *Granfinanciera* and the Supreme Court's prior decision in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), is appropriate. The original action in *Granfinanciera* was a complaint filed by the bankruptcy trustee, Nordberg, for a corporation, Chase & Sanborn, which was the debtor-in-possession in a pending Chapter 11 reorganization. In the action the trustee sought to avoid allegedly fraudulent transfers of funds by the bankruptcy corporation's predecessor and to recover damages, costs, expenses and interest for the bankruptcy estate. The defendant, Granfinanciera, requested a jury trial and the bankruptcy judge denied the demand for a jury trial deeming the action to be a non-jury issue. *Nordberg v. Republic Nat'l Bank*, 55 B.R. 538 (Bankr.S.D.Fla.1985). Following the district court's affirmance of the bankruptcy court's decision, the court of appeals also affirmed, specifically determining the Seventh Amendment supplied no right to a jury trial, because fraudulent conveyance actions are inherently equitable, even if the plaintiff in the action seeks only a money judgment as relief, because bankruptcy proceedings are inherently equitable and because Congress, by specifically designating fraudulent conveyances as a core proceeding (28 U.S.C. § 157(b)(2)(H)), intended that these proceedings be tried by a bankruptcy judge sitting without a jury. *Granfinanciera*, — U.S. at —, 109 S.Ct. at 2787–2788.

Justice Brennan, writing for six members of the court, held:

> The question presented is whether a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer. We hold that the Seventh Amendment entitles such a person to a trial by jury, notwithstanding Congress' designation of fraudulent conveyance actions as 'core pro-

ceedings' in 28 U.S.C. § 157(b)(2)(H) (1982) ed., Supp. IV.).

*Granfinanciera,* — U.S. at ——, 109 S.Ct. at 2787.

A significant portion of the Supreme Court's decision in *Granfinanciera* is devoted to a discussion and analysis of *Katchen.* The opinion stated:

> Our decision in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), under the Seventh Amendment rather than Article III, confirms this analysis. Petitioner, an officer of a bankrupt corporation, made payments from corporate funds within four months of bankruptcy on corporate notes on which he was an accommodation maker. When petitioner later filed claims against the bankruptcy estate, the trustee counterclaimed, arguing that the payments petitioner made constituted voidable preferences because they reduced his potential personal liability on the notes. We held that the bankruptcy court had jurisdiction to order petitioner to surrender the preferences and that it could rule on the trustee's claim without according petitioner a jury trial. Our holding did not depend, however, on the fact that "[bankruptcy] courts are essentially courts of equity" because "they characteristically proceed in summary fashion to deal with the assets of the bankrupt they are administering." Id., at 327, 86 S.Ct., at 471. Notwithstanding the fact that bankruptcy courts "characteristically" supervised summary proceedings, they were statutorily invested with jurisdiction at law as well, and could also oversee plenary proceedings. *See Atlas Roofing [v. OSHA],* 430 U.S. [442] at 454, n. 11, 97 S.Ct. [1261], at 1268, n. 11 [51 L.Ed.2d 464 (1977)] (Katchen rested "on the ground that a bankruptcy court, *exercising its summary jurisdiction,* was a specialized court of equity") (emphasis added); *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) ("*[F]or many purposes* 'courts of bankruptcy are essentially courts of equity' ") (emphasis added). Our decision turned, rather, on the bankruptcy court's having "actual or constructive possession" of the bankruptcy estate, 382 U.S., at 327, 86 S.Ct. at 471, and its power and obligation to consider objections by the trustee in deciding whether to allow claims against the estate. Id., at 329–331, 86 S.Ct., at 472–474. Citing *Schoenthal v. Irving Trust Co.* [287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932)], *supra,* approvingly, we expressly stated that, if petitioner had not submitted a claim to the bankruptcy court, the trustee could have recovered the preference only by a plenary action, and that petitioner would have been entitled to a jury trial if the trustee had brought a plenary action in federal court. See 382 U.S., at 327–328, 86 S.Ct., at 471–472. We could not have made plainer that our holding in *Schoenthal* retained its vitality: "[A]lthough petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity." 382 U.S., at 336, 86 S.Ct., at 476.

> Unlike Justice WHITE, see *post* [109 S.Ct.], at 2806–2808, 2809, we do not view the Court's conclusion in *Katchen* as resting on an accident of statutory history. We read *Schoenthal* and *Katchen* as holding that, under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate, not upon Congress' precise definition of the "bankruptcy estate" or upon whether Congress chanced to deny jury trials to creditors who have not filed claims and who are sued by a trustee to recover an alleged preference. Because petitioners here, like the petitioner in *Schoenthal,* have not filed claims against the estate, respondent's fraudulent conveyance action does not arise "as part of the process of allowance and disallowance of claims." Nor is that action integral to the restructuring of debtor-credi-

tor relations. Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury. *Katchen* thus supports the result we reach today; it certainly does not compel its opposite.

*Granfinanciera,* —— U.S. at ——, 109 S.Ct. at 2798–2799 (footnotes omitted). (emphasis in the original).

Although this court has omitted the footnotes of *Granfinanciera* from its various quotations, a portion of one of the footnotes in *Granfinanciera* further clarifies the position of the majority opinion concerning the meaning of *Katchen:*

> As *Katchen* makes clear, however, by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims, even though the debtor's opposing counterclaims are legal in nature and the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate.

*Granfinanciera,* —— U.S. at ——, 109 S.Ct. at 2799 n. 14.

In deciding *Granfinanciera,* the court emphasized that it was not overruling *Katchen.* In *Katchen,* 382 U.S. at 337, 86 S.Ct. at 477, the Court stated,

> As this Court has previously said in answering the argument that disputed claims must be tried before a jury:
>
> "But those who use this argument lose sight of the fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity. "So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts

as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods." *Barton v. Barbour,* 104 U.S. 126, 133–134 [26 L.Ed. 672]. This has been the characteristic view of the courts." (citations omitted)

As this court has previously noted, on November 8, 1989 Air filed a proof of claim in the amount of one hundred eighty-two thousand one hundred and sixty-four dollars and forty-nine cents ($182,164.49) against Hughes–Bechtol in this bankruptcy. Further, as the preceding portion of this decision makes clear, the determination of the various claims, counterclaims, set-off rights and subrogation rights which would be decided as a necessary part of the determinations rendered in these State Court actions would, under preclusion principles, constitute, in whole or in part, determinations of "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res" and become "part of the process of allowance and disallowance of claims" that is "integral to the restructuring of the debtor-creditor relations." *Granfinanciera,* —— U.S. at ——, 109 S.Ct. at 2798–2799.

Accordingly, the court determines that in this bankruptcy proceeding Air has submitted a proof of claim and has otherwise created an equitable proceeding in which the bankruptcy court is authorized to determine all issues without a jury.

### 5. *trial in bankruptcy court with a jury*

Although the above determination could arguably terminate any further consideration by this court of the jury trial issues in this proceeding, and this court adheres to the general principle of jurisprudence that a court should restrict its decision to the specific matters necessary to a resolution of the issues before it and not express opinions on issues that could be left for future decisions, nevertheless, in the particular facts and circumstances of this proceeding and as a result of the significance of this issue in both this court and in connection with any determination by the dis-

trict court in its review of this court's recommendations concerning removal, remand and abstention, this court will also address the remaining item in the suggested analysis of jury trials in bankruptcy proceedings—whether the bankruptcy court is authorized to conduct a jury trial.

This court recognizes that the district court's determination concerning the remand issue is "one shot, right or wrong," *In re La Provindencia Development Corp.*, 406 F.2d 251, 252–253 (1st Cir.1969), and extended litigation or repeated review procedures are not contemplated. *Boone Coal*, 787 F.2d at 1061. Accordingly, a report and decision from this court to the district court that contained recommendations concerning issues of remand, abstention and considerations of jury trial issues, but failed to reflect this court's determination that a bankruptcy court is not, under presently existing legislation, authorized to conduct a jury trial, would be significantly incomplete, if not substantially unfair, both to the litigants in this proceeding, and to the district court which must enter a final determination concerning other important issues presented in this proceeding.

In *Granfinanciera*, although the Supreme Court declined to decide the issue of whether a bankruptcy judge can preside at a jury trial, it noted constitutional concerns implicit in this issue:

> We also need not consider whether jury trials conducted by a bankruptcy court would satisfy the Seventh Amendment's command that "no fact tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the Rules of the common law," given that district courts may presently set aside clearly erroneous factual findings by Bankruptcy Courts. Bkrtcy. Rule 8013.

*Granfinanciera*, —— U.S. at ——, 109 S.Ct. at 2795.

> Nor do we express any view as to whether the Seventh Amendment or Article III allows jury trials in such actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts pursuant to the

1984 Amendments. We leave those issues for future decisions.

*Id.* at ——, 109 S.Ct. at 2802 (footnote omitted).

This court believes that a fair reading of *Granfinanciera* reflects a consistent concern by the Supreme Court that the separation of powers doctrine reflected in the independence of the Federal Judiciary pursuant to Article III of the Constitution requires the Supreme Court to exercise continual vigilance to prevent encroachment by the other branches of the government. It is also clear that the Supreme Court has determined that Congress has limited power to provide authority for non-Article III courts to adjudicate issues requiring a jury trial.

Commenting upon Congress' authority to create causes of actions involving public rights which do not require juries for adjudication, the court noted:

> As we recognized in *Atlas Roofing*, to hold otherwise would be to permit Congress to eviscerate the Seventh Amendment's guarantee by assigning to administrative agencies or courts of equity all causes of action not grounded in state law, whether they originate in a newly fashioned regulatory scheme or possess a long line of common law forebears. 430 U.S., at 457–458, 97 S.Ct., at 1270–1271. The Constitution nowhere grants Congress such puissant authority.

*Granfinanciera*, —— U.S. at ——, 109 S.Ct. at 2795.

With regard to Congress' fashioning causes of action that are closely analogous to common law claims but do not require juries for their resolution, the Supreme Court stated:

> "Congress' power to do so is limited, however, just as its power to place adjudicative authority in non-Article tribunals is circumscribed. *See Thomas v. Union Carbide Agricultural Product Co.*, 473 U.S. 568, 589, 593–594, 105 S.Ct. 3325, 3337, 3339–3340 [87 L.Ed.2d 409] (1985); *Id.*, at 598–600, 105 S.Ct., at 3342–3343 (BRENNAN, J. concurring in judgment); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50,

73–76, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982) (opinion of BRENNAN, J.); *Id.,* at 91, 102 S.Ct., at 2281 (REHNQUIST, J., concurring in judgment)."

*Id.* at ——, 109 S.Ct. at 2796.

Further, the Supreme Court emphasized that unless a statutory right is closely intertwined with a federal regulatory program that Congress has authority to enact, or involves rights that belong to or exist against the federal government, the adjudication of those rights must occur in a court exercising the complete authority of Article III. *Id.* at ——, 109 S.Ct. at 2797. The Supreme Court declined to determine whether the restructuring of debtor-creditor relations is in fact a public right, *Granfinanciera,* —— U.S. at ——, 109 S.Ct. at 2797 n. 11; however, the Supreme Court, citing *Northern Pipeline,* stated:

> There can be little doubt that fraudulent conveyance actions by bankruptcy trustees-suits which, we said in *Schoenthal v. Irving Trust Co.,* 287 U.S., at 94–95, 53 S.Ct., at 51 (citation omitted), "constitute no part of the proceedings in bankruptcy but concern controversies arising out of it-are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy *res.*" *See Gibson* 1022–1025. They therefore appear matters of private rather than public right.

*Granfinanciera,* —— U.S. at ——, 109 S.Ct. at 2798 (footnote omitted).

The court concluded that "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or specialized court of equity. See Gibson, 1022–1025." *Granfinanciera,* —— U.S. at ——, 109 S.Ct. at 2800.

In his dissenting opinion, Justice White noted the severe restrictions the majority's decision places on Congress' authority regarding non-Article III tribunals: "Past decisions [of the Supreme Court] have accorded Congress far more discretion in making these assignments." *Granfinanciera,* —— U.S. at ——, 109 S.Ct. at 2811.

Accordingly, this court regards *Granfinanciera* as a decision exploring the permissive boundaries of the exercise of judicial authority by a non-Article III court as much as a decision exploring Seventh Amendment rights in the context of authorized bankruptcy legislation.

It is significant to note that *Granfinanciera* explores several of the concerns first expressed in *Northern Pipeline:*

> As an inseparable element of the constitutional system of checks and balances, and as a guarantee of judicial law partiality, Art. III defines both the power and protects the independence of the judicial branch.
>
> . . . .
>
> The inexorable command of this provision is clear and definite: The judicial power of the United States must be exercised by courts having the attributes prescribed in Art. III.

*Northern Pipeline,* 458 U.S. at 58, 102 S.Ct. at 2865.

> In sum, our Constitution unambiguously ennunciates a fundamental principle—that the "judicial Power of the United States" must be reposed in an independent Judiciary. It commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence.

*Id.* at 60, 102 S.Ct. at 2866.

> The broad range of questions that can be brought into a bankruptcy court because they are "related to cases under Title 11" 28 U.S.C. § 1471(b) (1976) (*Id.,* Supp. III), *See supra,* at 3, is the clearest proof that even when Congress acts through a "specialized court", and pursuant to only one of its many Art. I Powers, appellants' analysis fails to provide any real protection against the erosion of Art. III jurisdiction by the unilateral action of the political branches. . . .

*Id.* at 73, 102 S.Ct. at 2873.

> But when Congress creates a statutory right, it clearly has the discretion, in

defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress' power to define the right that it has created. No comparable justification exists, however, when the right being adjudicated is not of congressional creation. In such a situation, substantial inroads into functions that have traditionally been performed by the judiciary cannot be characterized merely as incidental extensions of Congress' power to define rights that it has created. Rather, such inroads suggest unwarranted encroachments upon the judicial power of the United States, which our Constitution reserves for Art. III courts.

We hold that the Bankruptcy Act of 1978 carries the possibility of such an unwarranted encroachment. (footnote omitted)

*Id.* at 83, 102 S.Ct. at 2878.

By contrast, the bankruptcy courts exercise all ordinary powers of district courts, including the power to preside over jury trials, 28 U.S.C. § 1480 (1976 ed., Supp. III),

. . . .

In short, the "adjunct" bankruptcy courts created by the Act exercise jurisdiction behind the facade of a grant to the district courts, and are exercising powers far greater than those lodged in the adjuncts approved in either *Crowell* [*v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932)] or [*United States v.*] *Raddatz* [447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)].

*Id.* at 84, 102 S.Ct. at 2879 (footnote omitted).

Against this background, which clearly contains repeated statements by the United States Supreme Court raising serious constitutional issues concerning the exercise of jurisdiction by bankruptcy courts, this court begins its examination of the presently existing authority for a bankruptcy court to conduct a jury trial.

Again, the court notes that this issue does not present questions concerning the existence of jurisdiction in the district court to hear and determine bankruptcy cases and proceedings in which the Constitution provides for trial by jury, but rather questions concerning the exercise of such jurisdiction by a bankruptcy court in a constitutionally permissible manner. As one court recently observed:

Over-riding the concerns for jury trial rights in core or non-core proceedings, this court has concluded that its ability to grant and conduct a jury trial is not an issue of subject matter or *in personam* jurisdiction; rather, it is an issue of judicial procedural authority. One lesson from *Marathon* is that the bankruptcy court may have broad jurisdiction but it is not unlimited in its use thereof.

*Weeks v. Kramer (In re G. Weeks Securities, Inc.),* 89 B.R. 697, 713 (Bankr.W.D. Tenn.1988).

It adds little to the analysis in this decision to note that "the right to jury trials in bankruptcy proceedings is a complex issue and is a subject fostering divergent views." *McLouth v. Marblehead Lime Co. (Matter of McLouth Steel Corp.),* 55 B.R. 357, 358 (E.D.Mich.1985). This court also believes that it adds little to the analysis in this decision to set forth a series of citations to decisions from other bankruptcy, or district courts, all reported prior to *Granfinanciera,* that reach contrary conclusions on this complicated issue. It is clear that there is considerable authority, in both reported decisions and commentary, that bankruptcy courts are authorized to conduct jury trials and that bankruptcy courts are prohibited from conducting jury trials. (*See generally,* Sabino, *supra,* at 251–257, Gibson, *supra,* at 1027–1053, Warner, *supra,* at 42–51, Cyr, *supra,* 56–63 and cases collected therein.)

This court does, however, deem it significant to note that when Congress enacted the 1984 Amendments to the Bankruptcy Code, following *Marathon,* it did not expressly state whether bankruptcy judges

were authorized to conduct jury trials. The absence of an explicit statement by Congress either prohibiting bankruptcy courts from conducting jury trials or authorizing bankruptcy courts to conduct jury trials has led to decisions finding the absence of such an explicit statement a basis for authorizing a bankruptcy court to conduct a jury trial, *Dailey v. First Peoples Bank of New Jersey (In re Dailey)* 76 B.R. 963, 967 (D.N.J.1987), and a basis for prohibiting bankruptcy courts from conducting a jury trial, *Weeks*, 89 B.R. at 714. *Accord, Jefferson Nat'l Bank v. Durbin (In re I.A. Durbin Inc.)*, 62 B.R. 139, 146 (S.D. Fla.1986); *Hoffman v. Brown, (In re Brown)*, 56 B.R. 487, 490 (Bankr.D.Md. 1985). As the court in *Weeks*, 89 B.R. at 714 noted,

> It is a more compelling argument to this court that Congress could easily have expressed its intention that the bankruptcy courts *were* authorized to conduct such trials. The absence of that positive expression and the presence of statutory language to the contrary, coupled with the *Marathon* limits placed on this court's authority makes it clear to this Court that Congress did not authorize jury trials in the bankruptcy court. (emphasis in original)

Recalling that the bankruptcy court is a unit of the district court, it is helpful to analyze the basis for trial by jury conducted directly by the district court or conducted by a magistrate.

It may be noted that district courts do not have specific statutory authority to conduct jury trials; however, it must be remembered that they have the essential attributes of life tenure and irreducible salary consistent with the full judicial authority of Article III of the Constitution. It is more significant to note that that United States Magistrates have specific statutory authority expressly stating the circumstances under which they may conduct jury trials. The statute (28 U.S.C. § 636(c)(1)) (amended 1988) provides:

> Upon the consent of the parties, a full time United States Magistrate ... may conduct any or all proceedings in a jury ... civil matter and order the entry of judgment in the case, when specifically designated to exercise such jurisdiction by the district court or courts he serves.

Additionally, when a magistrate has acted pursuant to such authority, an appeal from the entry of such a judgment may be taken directly to the United States Court of Appeals "in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3).

The Supreme Court's recent unanimous decision, *Gomez v. United States*, 490 U.S. ——, ——, 109 S.Ct. 2237, 2245–2246, 104 L.Ed.2d 923 (1989), after recognizing the constitutional concerns implicated in a jury trial conducted by a non-Article III judicial officer, although declining to resolve the issue presented upon constitutional grounds, determined that the Federal Magistrates Act did not allow the delegation of jury selection to a magistrate, absent consent of the parties. After discussing the importance of jury selection in a jury trial, expressing "[s]erious doubts that a district judge could review this function meaningfully" and emphasizing the importance of the specific written consent of the parties as a necessary predicate to a magistrate conducting a jury trial, the Supreme Court concluded that "[t]he absence of a specific reference to jury selection in the statute [The Federal Magistrates Act of 1979, Pub.L. 96–82, 93 Stat. 643–647 as amended], or indeed, in the legislative history, persuades us that Congress did not intend the additional duties clause [§ 636(b)(3) ] to embrace this function." *Id.* at ——, 109 S.Ct. at 2247 (footnote omitted).

Although this court recognizes that *Gomez* was a criminal rather than a civil case, and the jury selection was conducted without, rather than with, the consent of the parties, it must be recognized that, even though Congress enacted a statute which provided specific authorization for a magistrate to conduct a jury trial, in order to avoid the implicit constitutional conflicts, the Supreme Court determined Congress did not intend by the "catchall provision" of the statute to authorize magistrates to conduct a jury selection process, much less

a jury trial, absent the parties' consent. As the court stated in *Weeks*, 89 B.R. at 714,

> By analogy to the Magistrates Act, it may be argued that "[t]he ability to conduct a jury trial is not an exclusive function of an Article III court." *M & E Contractors, Inc. v. Kugler–Morris General Contractors, Inc.*, 67 B.R. 260, 266 (N.D.Tex.1986); *see also In re American Community Services, Inc.* [86 B.R. 681], *supra* (Holding that bankruptcy judges may conduct jury trials in non-core proceedings *only* if the parties so *consent.*) This Court is not, however, saying that only Article III judges may conduct jury trials. Obviously, that is not true as evidenced by the multitude of state court jury trials. This Court does suggest that the statutory authority for consensual jury trials before a magistrate is significant to the extent that it evidences Congressional ability to authorize non-Article III courts to conduct jury trials. The absence of a similar statute for bankruptcy courts is equally significant. "[T]here is no authorization in Title 11 or Title 28 for bankruptcy judges to conduct jury trials" as there is in Title 28 for magistrates. King, "Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984," *supra*, at 704.

In connection with bankruptcy cases and proceedings it is clear that Congress has not enacted any legislation specifically authorizing a bankruptcy court to conduct a jury trial. Additionally, Congress consented to the abrogation of Bankr.R. 9015 which governed jury trials in the bankruptcy court. In light of the Supreme Court cases discussed in this decision, it is difficult for this court to conclude that Congress intended, by any presently existing legislation, to permit bankruptcy courts to conduct jury trials, assuming that the conduct of a jury trial by the bankruptcy court under existing legislation would meet constitutional standards.

Further, even if it could be concluded that Congress intended by existing legislation to authorize bankruptcy courts to conduct jury trials, other significant constitutional concerns prevent a bankruptcy court from conducting a jury trial. Contrary to the procedure for appeal to a Court of Appeals from a consensual jury decision before a magistrate, appeal from a decision of the bankruptcy court is limited (in most circuits) to the district court. 28 U.S.C. § 158(a); Bankr.R. 8001(a). This mandatory appeal process to the district court raises a clear constitutional impediment to the ability of the bankruptcy court to conduct a jury trial in any non-core proceeding.

The Seventh Amendment provides in part that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." (*See generally*, Federal Rules of Civil Procedure 50, 51 and 59). This language effectively prevents any subsequent jury trial on an issue previously tried to a jury; however, 28 U.S.C. § 157(c) provides that if a bankruptcy judge hears a proceeding that is not a core proceeding, but is otherwise related to a case under Title 11, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court and the district court will enter any final order or judgment after considering the bankruptcy judge's proposed findings of fact and conclusions of law and separately reviewing those matters to which any party has timely and specifically objected.

The tension that exists as a result of these separate constitutional and statutory requirements in the context of a non-core bankruptcy proceeding also creates further constitutional concerns with respect to Article III. If, pursuant to the provisions of the Seventh Amendment, the district court may not conduct a second jury trial (no fact tried by a jury, shall be otherwise reexamined in any court of the United States than according to the rules of the common law), the district court will obviously not be able to fulfill its Article III responsibility and its statutory duty (28 U.S.C. § 157(c)(1)) to review *de novo* a bankruptcy judge's proposed findings of fact and conclusions of law.

In the absence of specific statutory authority, the bankruptcy court should not

engender such constitutional conflicts by conducting jury trials in any non-core proceeding.

Further, there is an additional constitutional concern as a result of the first section of the Seventh Amendment which provides, "the right of trial by jury shall be preserved." In an early case, *Capital Traction Co. v. Hof*, 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873 (1899), the Supreme Court upheld a statute granting a justice of the peace in the District of Columbia jurisdiction over civil jury trials but permitting an appeal from any such judgment and granting the litigants the right to a second trial by jury. The Supreme Court held that the trials conducted before the justice of the peace of the District of Columbia did not constitute a trial by jury within the meaning of the Seventh Amendment. *Capital Traction*, 174 U.S. at 45, 19 S.Ct. at 597. Among the characteristics the justice of the peace lacked was authority to set aside a verdict if, in his opinion, it was against the law or the evidence. *Capital Traction*, 174 U.S. at 13–14, 19 S.Ct. at 585–586. The court explained that:

> The act of 1823, in permitting cases before him [the District of Columbia's justice of the peace] to be tried by jury, did not require him to superintend the course of the trial or to instruct the jury in matters of law; nor did it authorize him, upon the return of their verdict, to arrest judgment upon it, or to set it aside, for any cause whatever; but made it his duty to enter judgment upon it forthwith, as a thing of course. A body of men, so free from judicial control, was not a common law jury; nor was a trial by them a trial by jury, within the meaning of the Seventh Amendment to the Constitution.

*Id.* at 39, 19 S.Ct. at 595.

The Supreme Court in *Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), amplified the Seventh Amendment's requirements for a jury trial and explained:

> History plainly reveals that a trial by jury before a justice of the peace in England, unlike trial before a justice of the peace in the District of Columbia, was a jury trial in the full constitutional sense. English justices of the peace were required to be learned in the law. They were judges of record and their courts, courts of record. The procedures they followed differed in no essential manner from that of the higher court of the assize held by the King's judges. *Trial by jury before the justices of the peace proceeded in the usual manner of a criminal trial by jury in the King's court.*

*Pernell*, 416 U.S. at 381, 94 S.Ct. at 1732 (footnote omitted) (emphasis supplied).

Accordingly, the bankruptcy court in conducting a jury trial in a core proceeding, which by definition does not require any party's consent for the court to enter a final determination, will, by entering final judgment, exercise full judicial authority pursuant to the principles of the Seventh Amendment (*Capital Traction, Pernell, supra*); however, as a result of the exercise of the full authority of an Article III Court, the bankruptcy court will no longer be acting as a unit of an Article III court pursuant to the principles of *Northern Pipeline*. Although these constitutional impediments may not be insurmountable (See Gibson, *supra*, at 1034–1053), again, in the absence of specific statutory authority, the bankruptcy court should not engender such constitutional conflicts by conducting jury trials in core proceedings.

Further, although this court does not regard the absence of presently existing space, facilities and personnel as dispositive of the jury trial issue, it does recognize these concerns are additional impediments to conducting a jury trial and it agrees with those courts that have determined that jury trials are incompatible with the presently existing structure of bankruptcy courts. *DuVoisin v. Anderson (In re Southern Industrial Banking Corporation)*, 66 B.R. 370, 375 (Bankr.E.D.Tenn.1986); *Stewart v. Strasburger, (In re Astrocade)*, 79 B.R. 983, 991 (Bankr.S.D.Ohio 1987), *Hoffman v. Brown, (In re Brown)*, 56 B.R. 487, 490 (Bankr.D.Md.1985) *Davis v. Clark, (In re Clark)*, 75 B.R. 337, 340 (N.D.Ala.1987).

By way of summary, the court notes that a jury demand could be presented in a proceeding before the bankruptcy court in the following five (5) procedural postures: (*# 1*) a non-core proceeding in which the parties do not consent to a jury trial in the bankruptcy court, nor to the entry of final judgment by the bankruptcy court; (*# 2*) a core proceeding in which the parties do not consent to a jury trial in the bankruptcy court; (*# 3*) a non-core proceeding in which the parties consent to a jury trial in the bankruptcy court, but not the entry of final judgment in the bankruptcy court; (*# 4*) a non-core proceeding in which the parties consent to a jury trial and the entry of a final judgment in the bankruptcy court and (*# 5*) a core proceeding in which the parties consent to a jury trial in the bankruptcy court.

In the first three procedural postures (*# 1, # 2,* and *# 3*), in which the parties do not consent to a jury trial in the bankruptcy court, or do not consent to the entry of final judgment by the bankruptcy court, the Supreme Court's decisions concerning the requirements of the Seventh Amendment and Article III prevent a bankruptcy court from conducting a jury trial. In the remaining two procedural postures (*# 4* and *# 5*), in which the parties consent to a jury trial in the bankruptcy court and the parties consent to the court entering final judgment, or the court is authorized to enter final judgment, if Congress were to enact legislation specifically authorizing the bankruptcy court to conduct a jury trial, the bankruptcy court could conduct a jury trial; however, since no such legislation exists, the bankruptcy court cannot conduct a jury trial at the present time. *Weeks,* 89 B.R. at 709; *Friedman v. Gold Advice, Inc. (In re Fort Lauderdale Hotel Partners, Ltd.)* 103 B.R. 335, 336 (Bankr.S. D.Fla., 1989).

In reaching this decision, this court recognizes that its conclusions, in whole or in part, may be incorrect and prove insufficient upon review. Further, this court recognizes that a significant number of courts following well reasoned, good faith analyses of these issues have reached contrary conclusions. This court certainly has no desire to increase the dockets of other courts, either in the federal or the state court system, nor to prevent or delay litigants in the proper exercise of their rights; nevertheless, in light of the conflicting constitutional concerns implicated in the present jurisdictional structure of the bankruptcy court, the absence of specific congressional authorization, and the availability of otherwise constitutionally secure and statutorily authorized forums for the exercise of jury trial rights, this court, in accordance with the reasons contained in this decision, is persuaded that the proper exercise of a bankruptcy court's jurisdiction prevents it from conducting jury trials at the present time.

This leads the court to the final issue implicated in this proceeding, the motion for withdrawal of this adversary proceeding. This court recognizes that it is not authorized to express any opinion concerning the merits of Hughes–Bechtol's motion seeking withdrawal of the reference, since such matters are committed exclusively to a determination by the district court, *Sonnyco v. Bartley (In re Sonnyco Coal, Inc.),* 89 B.R. 658, 670 (Bankr.S.D.Ohio 1988); *54th & Harper v. Southmark Corp.,* 82 B.R. 590, 592 (D.Utah, 1988); Bankr.R. 5011(a); however, this court believes it has an obligation to continue to administer this proceeding pending the district court's determination. (B.R. 5011(c)). *THB Corp. v. Essex Builders Co. (In re THB Corp.),* 94 B.R. 797, 803 (Bankr.D. Mass.1988).

This court has by separate order scheduled a pretrial conference to determine the status of this proceeding and other related adversary proceedings involving claims by other subcontractors of Hughes–Bechtol who had pending State Court actions in connection with which Hughes–Bechtol has sought removal to this court and thereafter withdrawal to the United States District Court for consolidation with other actions currently pending before the United States District Court.

Accordingly, in accordance with this decision and report, the court determines this proceeding to be a core proceeding which

this court may hear and determine without a jury, and recommends that the district court enter an order determining the State Court actions involved in the adversary proceeding to be properly removed, declining to remand them, determining mandatory abstention is not required and permissive abstention is not appropriate.

Orders and recommendations consistent with this decision and report are simultaneously entered.

SO ORDERED.

## APPENDIX 1

### Rule 9015—JURY TRIAL

(a) *Trial by Jury.* Issues triable of right by jury shall, if timely demanded, be by jury, unless the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury.

(b) *Demand.*

(1) *Time; Form.* Any party may demand a trial by jury of any issue triable by a jury by serving on the other parties a demand therefor in writing not later than 10 days after service of the last pleading directed to such issue. The demand may be indorsed on a pleading of the party. When a jury trial is demanded it shall be designated by the clerk in the docket as a jury matter.

(2) *Specification of Issues.* In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury of all the issues so triable. If he has demanded trial by jury of only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues.

(3) *Determination by Court.* On motion or on its own initiative the court may determine whether there is a right to trial by jury of the issues for which a jury trial is demanded or whether a demand for trial by jury in a proceeding on a contested petition shall be granted.

(c) *Waiver.* The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5005 constitutes a waiver of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

(d) *Trial by the Court.* Issues not demanded for trial by jury shall be tried by the court. Notwithstanding the failure of a party to demand a jury when such a demand might have been made of right, the court on its own initiative may order a trial by jury of any or all issues.

(e) *Advisory Jury and Trial by Consent.* In all actions not triable of right by jury the court on motion or on its own initiative may try and issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

(f) *Applicability of Certain of the Federal Rules of Civil Procedure.* Rules 47–51 of F.R.Civ.P. apply when a jury trial is conducted.