In re TRANSCON LINES, Debtor.

Leonard L. GUMPORT, Chapter 7 Trustee of the bankruptcy estate of Transcon Lines, Plaintiffs,

v.

GROWTH FINANCIAL CORPORATION, a Delaware corporation; OHA, Inc., a Delaware corporation; P–I–E Nationwide, Inc., a Florida corporation; Growth Investments, Inc., a Delaware corporation; Olympia Holding Corporation, a Delaware corporation, Defendants.

Bankruptcy Nos. BKDJ CV 90–4282 DT, LA 90–10680–RR.

Adv. No. 90–1577.

United States District Court, C.D. California.

Dec. 11, 1990.

Patrick L. Shreve, Marjorie S. Steinberg, Alan D. Smith, Tuttle & Taylor, Los Angeles, Cal., for plaintiff Leonard L. Gumport, Chapter 7 Trustee.

Richard W. Havel, Amy Applebaum, Jennifer C. Hagle, Sidley & Austin, Los Angeles, Cal., Robert A. Downing, Sidley & Austin, Chicago, Ill., for Growth Financial Corp. and Growth Investments Inc.

Edward Gartenberg, Burris, Drulias & Gartenberg, Los Angeles, Cal., Richard Sarafan, Richard & Richard, Miami, Fla., of counsel, for defendant Olympia Holding Corp.

Ronald Litz, Antin, Magasinn, Litz & Grebow, Los Angeles, Cal., Fred Harris, Jr., Roberts, Baggett, LaFace & Richard, Tallahassee, Fla., Gerald Curington, Roberts, Baggett, LaFace & Richard, Jacksonville, Fla., for defendant P–I–E Nationwide, Inc.

Terry Avchen, Christensen, White, Adler, Fink & Jacobs, Los Angeles, Cal., for defendant OHA, Inc.

## MEMORANDUM OPINION

TEVRIZIAN, District Judge.

### BACKGROUND

On or about May 1, 1990, the creditors of Transcon Lines (Transcon) filed an involuntary Chapter 7 petition against Transcon.

The debtor, Transcon, subsequently consented to an entry of an order for relief under Chapter 11. Leonard L. Gumport was appointed trustee of the bankruptcy estate.

The trustee of Transcon filed an adversary proceeding on or about July 19, 1990, against the named defendants for fraudulent transfers; avoidance of transfers; preliminary and permanent injunction; accounting; constructive trust; provisional relief; turnover of property of estate; breach of contract; and declaratory relief and damages.

In the adversary proceeding the trustee is seeking the return of prepetition assets, allegedly paid, to Growth Financial Corp. and Growth Investment Corp. (Growth defendants). The trustee alleges that the prepetition payment was a fraudulent conveyance under the Bankruptcy Code, 11 U.S.C. § 544(b) as well as under California law. The trustee also alleges that Transcon and the defendants were affiliates and insiders within the meaning of Bankruptcy Code §§ 101(2) and 101(3) in connection with various agreements to transfer Transcon's assets. In addition, the trustee further alleges that at the time the transfers occurred, there existed actual creditors of Transcon whose claims arose before the transfers and whose claims are still unpaid.

The Growth defendants, in their answer to the trustee's complaint, made a timely demand for a jury trial. As of this date, none of the named defendants has filed a formal claim against the bankruptcy estate.

Under the belief that a jury demand would deprive the bankruptcy court of jurisdiction and require that the District Court adjudicate the trustee's claims, the Growth defendants have asked this District Court to withdraw reference to the bankruptcy court. Defendants OHA, Inc. (OHA) and Olympia Holding Co. (Olympia) have joined in the Growth defendants' motion.[1]

1. The Honorable Dickran Tevrizian presided over this motion to withdraw reference pursuant to General Order 224–D, which provides for the assignment of a United States District Court Judge sitting as a Bankruptcy Duty Judge to determine motions to withdraw reference.

## DISCUSSION

### A. *Standard*

28 U.S.C. § 157(d) provides, in pertinent part, that the district court may withdraw, in whole or in part, any case or proceeding referred under this section, for cause shown. The defendants maintain that this Court should withdraw the reference to the bankruptcy court because (1) defendant are entitled to a jury trial in the adversary proceeding filed by the trustee on behalf of the bankruptcy estate, and (2) the bankruptcy court does not have jurisdiction to conduct a jury trial. The trustee argues that defendants have not shown cause for the withdrawal of reference for four reasons: (1) the possibility of a jury trial is speculative; (2) the withdrawal of reference will deprive the parties and this Court of the expertise of the bankruptcy judge; (3) withdrawal is premature as the law is uncertain as to a bankruptcy court's authority to conduct jury trials; and (4) withdrawal is premature because defendants will forfeit their right to a jury trial if they file claims against the bankruptcy estate.

■ The reasons advanced by the trustee do not convince this Court that withdrawal of the reference is improper or premature. The Growth defendants have filed a timely jury demand, and for the reasons set forth below, this Court holds that the defendants do have a right to a jury trial in the District Court based upon the Seventh Amendment to the United States Constitution. Due to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation. Although it is conceivably true that the trustee's action may never come to trial, this Court is of the opinion that proper jurisdiction and administration over this adversary proceeding

Once the reference to the bankruptcy court is withdrawn, the case is assigned to the District Court and pursuant to local rules, randomly assigned to a United States District Court Judge for all further proceedings.

at this time lies in the District Court and not in the bankruptcy court.

Transcon also contends that the defendants may forfeit their right to a jury trial by the subsequent filing of claims against the bankruptcy estate. In the event that the defendants do subsequently file claims against the bankruptcy estate and consent to the equitable jurisdiction of the bankruptcy court, the District Court Judge possesses the power and authority to reinstate the reference at any time.

The trustee further argues that it would be premature to withdraw the reference as there is uncertainty in the state of the law with regards to the bankruptcy court's authority to conduct jury trials. Recently, the Supreme Court granted *certiorari* in the case of *Ins. Co. of State of Pennsylvania v. Ben Cooper, Inc.*, —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990) (*In re Ben Cooper*, 896 F.2d 1394 (2d Cir.1990)) to resolve this issue; however, on November 13, 1990 the Supreme Court vacated the judgment of the Second Circuit and remanded the case for consideration of a jurisdictional issue raised by the United States, an intervening party. *Ins. Co. of State of Pennsylvania v. Ben Cooper, Inc.*, —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990). As the Supreme Court will not issue a substantive ruling concerning the authority of a bankruptcy court to conduct a jury trial in the near future, it is this Court's opinion that it is not appropriate to delay its decision as to whether to withdraw the reference in this matter.

This Court must therefore answer two questions in order to determine whether to withdraw the reference to the bankruptcy court. The first is whether defendants are entitled to a trial by jury. The second concerns whether the bankruptcy court has the authority to conduct a jury trial. In the event that this Court determines both that the defendants are entitled to a jury trial and that the bankruptcy court does not possess the authority to conduct a jury trial, it would appear that this Court must

grant defendants' motion to withdraw the reference.

### B. *Defendants' Right to a Jury Trial*

▆ In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court recognized that in certain bankruptcy proceedings, a party may have a Seventh Amendment right to a jury trial. The question before the Court in *Granfinanciera* was whether a party who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee to recover an allegedly fraudulent monetary transfer. In *Granfinanciera*, the trustee of the estate sought to recover alleged fraudulent transfers from the defendant. The trustee filed the complaint in the district court, which referred the action to the bankruptcy court. The defendant, who had not filed any claims against the estate, demanded a jury trial, which the bankruptcy court denied. *Granfinanciera*, 109 S.Ct. at 2797. The Supreme Court held that the defendant had a Seventh Amendment right to a jury trial on the trustee's fraudulent transfer claim, finding that fraudulent transfer actions were historically brought in courts of law before juries, and that a fraudulent transfer claim involves private, common law rights. *Id.* 109 S.Ct. at 2790–94.

Although Congress had assigned bankruptcy courts jurisdiction to "hear and determine" fraudulent transfer actions as a "core" proceeding, the Court held that Congress could not preempt the right to a jury trial by providing that a non-Article III tribunal hear the claim. 28 U.S.C. § 157(b)(2); *Id.* 109 S.Ct. at 2795. In *Granfinanciera*, the Supreme Court held that a party to a congressionally designated "core" adversary proceeding in bankruptcy may have a Seventh Amendment right to a jury trial. The Court went on to expressly state that it need not decide, and reserved the issues of (1) whether Congress has authorized bankruptcy courts to hold jury trials in such actions, and (2)

whether that authorization would be constitutional. 109 S.Ct. at 2794–95, 2802, n. 19.[2]

Since the trustee's complaint against the defendants in the instant action includes six claims for fraudulent transfer, and other claims which traditionally involve private, common law rights, and defendants herein have not filed any claims against the bankruptcy estate, the issue of the defendants' right to a jury trial seems to fit within the holding of *Granfinanciera.* *See In re Ben Cooper, Inc.,* 896 F.2d 1394, 1402 (2d Cir.1990), *vacated, Ins. Co. of State of Pennsylvania v. Ben Cooper, Inc.,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990) (state law contract claim inherently legal). Accordingly, this Court concludes that defendants herein have established their right to a trial by jury pursuant to the Seventh Amendment to the United States Constitution.

### C. *Authority of Bankruptcy Court to Conduct Jury Trials*

Congress created bankruptcy courts pursuant to its substantive authority over bankruptcies. U.S. Const. art. I, § 8, cl. 4. Unlike an Article III court, a bankruptcy court has no inherent powers; "congress vests bankruptcy courts with their jurisdiction and their authority has no 'inherent' source." *In re Sequoia Auto Brokers, Ltd. Inc.,* 827 F.2d 1281, 1284 (9th Cir. 1987). Consequently, bankruptcy judges have jurisdiction to conduct jury trials only if they possess a statutory basis for that authority. *See also Granfinanciera,* 109 S.Ct. at 2796; *In re Hughes–Bechtol, Inc.,* 107 B.R. 552, 570–71 (Bankr.S.D. Ohio 1989).

Since the Supreme Court's holding in *Granfinanciera,* four circuits have attempted to answer the questions left open by the Supreme Court in its opinion. Succinctly stated, these questions are as follows: (1) whether Congress has authorized bankruptcy judges to preside over jury trials, and (2) whether this authorization can withstand constitutional scrutiny. The first appellate court to address these issues found that bankruptcy courts had the statutory authority to conduct jury trials. *In re Ben Cooper, Inc.,* 896 F.2d at 1402. In the *In re Ben Cooper, Inc.* case, the Second Circuit held that despite the lack of specific statutory authority, Congress impliedly conferred the power to preside over jury trials upon bankruptcy judges. The court explained that since it is Congress' intent that certain "core" issues that may be legal in nature, like fraudulent conveyances, be determined by a bankruptcy judge with authority to issue final orders, and since the Supreme Court has determined that legal "core" issues are subject to the Seventh Amendment, the only way to reconcile these competing concerns is to allow jury trials in bankruptcy courts. Thus, the Second Circuit's conclusion is premised upon the reasoning that because Congress could not deprive a private litigant of his or her Seventh Amendment right by assigning an Article I forum to hear subject matter pertaining to private rights, Congress intended that the Article I forum have the authority to conduct jury trials. The court also held that this statutory authority did not violate either the Seventh Amendment or Article III of the Constitution. 896 F.2d at 1403–04.

The Eighth Circuit disagreed with the Second Circuit. In *In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d 1449 (8th Cir.1990) the court held that a bankruptcy judge does not have the statutory authority to conduct jury trials. The court reasoned that Congress has not conferred express or implied authority upon the bankruptcy court, and that the power to hold jury trials is not indispensable nor essential to execute the power actually conferred upon the bankruptcy court by the 1984 Bankruptcy Act, enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98

---

**2.** Under *Granfinanciera,* a district judge who is reviewing whether a congressionally designated "core" claim is truly legal in nature must not rely upon the congressional labels attached to the claims. Instead, the reviewing judge must carefully analyze the nature of the relief being sought in the proceeding. The Supreme Court in *Granfinanciera* analyzed the nature of a fraudulent conveyance claim without discussing whether Congress had properly labelled it a "core" claim, suggesting that labels mean nothing.

Stat. 333, to hear and determine true "core" matters. 901 F.2d at 1454–56.

In the case of *In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990), the Tenth Circuit agreed with the Eighth Circuit, holding that bankruptcy judges lack the power to conduct jury trials over congressionally designated "core" claims.[3] The court here based its decision on statutory grounds, and generally relied upon the *In re United Missouri Bank of Kansas City, N.A.* opinion, finding that the Eight Circuit's opinion was better reasoned than the Second Circuit's in *In re Ben Cooper, Inc.*.

Finally, the Ninth Circuit has held that a bankruptcy court has no authorization to conduct jury trials in "non-core" matters. *In re Cinematronics, Inc.*, 916 F.2d 1444 (9th Cir.1990). Since the Seventh Amendment provides that "no fact tried by a jury shall be otherwise re-examined in any Court of the United States, other than according to the rules of common law", the court found that "grave Seventh Amendment problems would arise if a jury trial is conducted by the bankruptcy court" because § 157(c)(1) of the 1984 Bankruptcy Act requires de novo review by the district court of "non-core" matters. *Id.* at 1451. Thus, if district courts refused to review bankruptcy court jury verdicts on "non-core" matters with the de novo standard they would be acting contrary to the express statutory mandate of § 157(c)(1). On the other hand, if district courts reviewed the bankruptcy court verdicts de novo they would be at odds with the Seventh Amendment. Accordingly, the Ninth Circuit affirmed the view that a "non-core" matter requires a jury trial and that if the parties do not consent to bankruptcy jurisdiction, withdrawal of the case to the district court is appropriate. *Id.*

The defendants here argue that the *In re Cinematronics, Inc.* decision controls this Court's determination as to whether to withdraw the reference because the matter here involves mixed "core" and "non-core" claims. As far as the trustee's "non-core" claims are concerned, this Court finds that the withdrawal of reference is appropriate because the bankruptcy court does not have the authority to conduct a jury trial over "non-core" claims under the Ninth Circuit's holding in *In re Cinematronics, Inc.*. The trustee contends that the Ninth Circuit case does not control here as the trustee could always dismiss or otherwise get rid of his "non-core" claims, and that the rationale underlying the Ninth Circuit's decision does not necessitate the same result in terms of the authority of a bankruptcy court to conduct a jury trial over congressionally designated "core" matters. However, even if the trustee were to drop all of his "non-core" claims, this Court's decision would not be affected as the Court finds that bankruptcy courts have neither the express nor the implied authority to conduct jury trials over congressionally designated "core" or "non-core" matters which require jury resolution under *Granfinanciera*.

### 1. *Express Authority*

In *In re Ben Cooper, Inc.*, the Second Circuit acknowledged that the 1984 Act, in particular § 157, does not contain any specific or express authority granting a bankruptcy judge the power or authority to conduct jury trials. 896 F.2d at 1402. The only reference to jury trials in the 1984 Act is contained in § 157(b)(5), and discusses the district court's authority, not the bankruptcy court's. Moreover, Congress is well aware of the language necessary to ex-

---

**3.** One aspect of the 10th Circuit's opinion in *In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir. 1990) is suspect in light of the Supreme Court's recent decision in *Langenkamp v. Culp*, — U.S. ——, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) which reversed the 10th Circuit's holding that parties who have filed claims against the estate are still entitled to a jury trial on their legal claims if they have made a timely demand. *In re Republic Trust & Sav. Co.*, 897 F.2d 1041 (10th Cir.1990), *rev'd per curiam, Langenkamp*

*v. Culp*, — U.S. ——, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). It appears from the *Kaiser* opinion that the defendants did make claims against the estate. *In re Kaiser Steel Corp.*, 911 F.2d at 389. Thus in as much as the court in *Kaiser* relied upon *Langenkamp*, the *Kaiser* opinion may no longer be good law. However, this Court is relying solely upon the part of the *Kaiser* opinion which holds that a bankruptcy court has no power to conduct jury trials in congressionally designated "core" matters.

pressly grant the power to conduct jury trials to a non-Article III tribunal, as it has conferred that power upon magistrates in certain limited circumstances. 28 U.S.C. §§ 636(a)(3) and 636(c)(1). *See also In re Sequoia Auto Brokers, Ltd., Inc.*, 827 F.2d 1281 (9th Cir.1987) (if Congress had intended bankruptcy judges to exercise the contempt power, it knows how to confer it). Thus, it is quite clear that the language of the 1984 Act did not expressly grant bankruptcy courts the power to conduct jury trials.[4]

### 2. *Implied Authority*

As there is no express authority granting bankruptcy judges the power to preside over jury trials, the Court must now consider whether such power may be implied. *In re Sequoia Auto Brokers, Ltd., Inc.*, 827 F.2d at 1284. In so considering, this Court must be extremely cautious and wary of extending power to a non-Article III tribunal, especially where such an extension may raise constitutional concerns. To find that Congress impliedly conferred the power to conduct jury trials upon bankruptcy courts, this Court must rely upon specific references to jury trials in the legislative history to the 1984 Act rather than ambiguity or conjecture. *See Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 2247, 104 L.Ed.2d 923 (1989) (lack of reference to power of federal magistrate to conduct voir dire in criminal cases in the statute or in the legislative history supports finding that Congress did not intend the magistrates to exercise this duty); *In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d at 1456 (court hesitant to reach to far to imply authority for Article I judge to try jury cases involving private rights); *In re Hipp, Inc.*, 895 F.2d 1503, 1518 (5th Cir.1990) (court would not imply grant of criminal contempt power to bankruptcy courts where not expressly granted by Congress); *In re Hughes–Bechtol, Inc.*, 107 B.R. at

571–72 (in the absence of specific statutory authority, bankruptcy court should not create constitutional conflicts by conducting a jury trial).

In *In re Ben Cooper, Inc.*, the Second Circuit held that Congress conferred the implied authority to conduct jury trials upon the bankruptcy judges. *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2d Cir.1990), *vacated, Ins. Co. of State of Pennsylvania v. Ben Cooper, Inc.*, ––– U.S. –––, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990). Specifically, the court based its holding on two provisions of the Bankruptcy Code: (1) § 151 which states that each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit or proceeding; and (2) § 157(b) which provides that bankruptcy judges have the authority to conduct trials and issue final orders in congressionally designated "core" proceedings. The *In re Ben Cooper, Inc.* court concluded that since certain congressionally designated "core" matters could require a jury trial and Congress has authorized bankruptcy courts to conduct trials and issue final orders in "core" matters, in enacting the 1984 Bankruptcy Act, Congress implicitly granted bankruptcy courts the power to conduct jury trials.

However, this Court does not agree with the court's statutory construction and interpretation in *In re Ben Cooper*. Under the Second Circuit's own reasoning, until the Supreme Court issued its 1989 opinion in *Granfinanciera*, it is possible that Congress never even presumed that jury trial rights would extend to "core" proceedings. As such, in 1984, when Congress passed § 157(b), Congress did not have to implicitly grant bankruptcy courts the power to conduct jury trials as it probably never envisioned that jury trial rights could attach to congressionally designated "core"

---

**4.** Any previously existing express authority has been either repealed or abrogated. The 1984 Act effectively repealed 28 U.S.C. § 1480 which many courts had interpreted to authorize bankruptcy courts to conduct jury trials. Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment,* 72 Minn.L.Rev. 967, 989, n. 96 (1988).

King, *Jurisdiction & Procedure Under the Bankruptcy Amendments of 1984,* 38 Vand.L.Rev. 675, 703, n. 79 (1985). Similarly, in 1987, Congress abrogated Fed.Bankr.R. 9015 because some courts had erroneously concluded that the rule gave bankruptcy courts this power. *In re Hughes–Bechtol, Inc.,* 107 B.R. 552, 562 (Bankr. S.D. Ohio, 1989).

matters. *See In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d at 1456 (it is plausible that Congress simply intended to transfer all proceedings relating to the bankruptcy estate to the sole jurisdiction of bankruptcy court without regard as to whether a party was entitled to a jury trial or which forum would conduct the trial).

The reasoning advanced by other courts holding that it was Congress' intent to authorize bankruptcy courts to conduct jury trials is similarly implausible. Some bankruptcy courts that have found that Congress intended to grant them the authority to conduct jury trials have relied upon the provisions of 28 U.S.C. § 157, which place a limitation upon a bankruptcy court's authority to conduct jury trials. § 157(b)(5) specifies that personal injury tort and wrongful death actions must be tried by jury in the district court. Reasoning that this limitation on bankruptcy courts suggests that Congress intended that all other jury trials be held before a bankruptcy judge, these courts have used this provision as a basis for the authority to conduct jury trials. *See In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d at 1454–55 (collecting cases).

However, this argument is unconvincing when viewed in conjunction with the legislative history of the 1984 Act. The legislative history simply does not support the position that because § 157(b)(5) specifies that certain causes of action must be tried in a district court, all other causes of action may be tried before a bankruptcy court. The legislative record is devoid of any reference to the congressional intent to grant bankruptcy judges the power to conduct jury trials. *Id.* at 1455, n. 16; Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment,* 72 Minn.L.Rev. 967, 991 (1988) [hereinafter *Jury Trials* ]. It is almost impossible to conclude that a legislative record with absolutely no mention of authorizing bankruptcy courts to conduct jury trials can constitute the basis for inferring the Congressional intent to confer

such a power. *See also In re Bouldin,* 1990 W.L. 95746 (Bankr.N.D.Ga. January 19, 1990) (it is significant that the only time Congress addressed the jury trial issue in the 1984 Act, it directed that district courts conduct the jury trial, not bankruptcy courts).

One commentator has suggested that there are convincing indications that Congress intended for bankruptcy judges to conduct jury trials. Gibson, *Jury Trials,* 72 Minn.L.Rev. at 1028. Ms. Gibson suggests that when Congress enacted the 1984 Act, it declined to enact the Emergency Rule's [5] express prohibition against conducting jury trials, even though it generally adopted the Emergency Rule's approach to the exercise of bankruptcy jurisdiction. *Id.* at 1028, n. 289 (citing cases). Gibson concludes that it seems more likely that Congress failed to enact a provision clearly stating bankruptcy judges were authorized to conduct jury trials because of the uncertainty about such a provision's constitutionality. *Id.*

However, as explained above, it is more plausible that in 1984, Congress never considered the constitutionality of a bankruptcy court's power to conduct jury trials in "core" proceedings; in 1984, it was unclear as to whether jury trial rights could even extend to congressionally designated "core" matters. Furthermore, the legislative history that does refer to bankruptcy courts and jury trials supports a finding that Congress intended to continue, not abandon the Emergency Rule's prohibition against a bankruptcy judge conducting a jury trial. *In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d at 1455, n. 16.

Moreover, in analyzing the congressional intent surrounding the enactment of the 1984 Act, it appears far more likely that Congress did not intend to grant jury trial power to the bankruptcy courts. The 1978 Bankruptcy Reform Act, Pub.L. 95–598, 92 Stat. 2549 (1978), enacted a comprehensive revision of the bankruptcy laws. The 1978

---

**5.** The Emergency Rules were adopted by the Judicial Conference in response to the *Marathon* decision to provide operating rules for the

bankruptcy courts until Congress enabled a new system. *In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d at 1455, n. 16.

844

Act made significant changes to both the substantive and procedural existing bankruptcy law. The 1978 Act conveyed jurisdiction over all "civil proceedings" arising under title 11 or arising in or related to cases under title 11, and placed that authority in the bankruptcy courts. 28 U.S.C. § 1471(b) (repealed). Although the act did not expressly provide the authority for jury trials, it is apparent from the extremely broad grant of authority and the legislative history that Congress intended bankruptcy courts exercise that authority. *See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 55, 102 S.Ct. 2858, 2863, 73 L.Ed.2d 598 (1982) (interpreting 28 U.S.C. § 1480 (repealed) as providing the bankruptcy courts with authority to conduct jury trials). The *Marathon* Court declared this broad grant of jurisdiction unconstitutional, holding that the 1978 Act's provisions vested all "essential attributes" of judicial power in bankruptcy courts, in violation of Article III. 458 U.S. at 84–85; 102 S.Ct. at 2878–79.

Congress responded to the *Marathon* decision with the 1984 Act which established a bifurcated method for the adjudication of claims in bankruptcy court. If a claim is designated a "core" proceeding, the bankruptcy court may "hear and determine" the claim and enter appropriate orders and judgments subject to review in district court. § 157(b)(1). If a claim is designated a "non-core" proceeding, the bankruptcy court may only "hear" the case and submit proposed findings of fact and conclusions of law to the district court, which retains the authority to enter a final judgement. § 157(c)(1).

This statutory process governing "non-core" proceedings is inconsistent with any notion that Congress has provided the bankruptcy court the implicit authority to try jury cases in "non-core" matters for the reasons set forth in the Ninth Circuit's opinion in *In re Cinematronics, Inc.*. Furthermore, due to the result and the tone of the Supreme Court's opinion in *Marathon*, it is highly unlikely that in enacting the 1984 Bankruptcy Act Congress intended to confer the jury trial power for any type of proceeding; at the time the 1984 Act was enacted, Congress was extremely wary of its authority to confer Article III powers upon Article I courts. *In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d at 1456. *See also In re Sequoia Auto Brokers, Ltd. Inc.*, 827 F.2d at 1289 (1984 Act passed in response to Supreme Court's decision in *Marathon* to curtail the power of the bankruptcy court).[6]

Thus, this Court finds that Congress has not statutorily authorized bankruptcy courts to conduct jury trials over congressionally designated "core" and "non-core" proceedings which require jury resolution under *Granfinanciera*.[7] As such, I

6. Although not dispositive, some bankruptcy judges have recognized that the absence of space, facilities, and personnel constitute further impediments to jury trials in the bankruptcy courts. *E.g., In re Hughes–Bechtol, Inc.*, 107 B.R. at 572. Jury trials are simply incompatible with the existing structure of bankruptcy courts.

7. Even if Congress had done so, this Court would be obliged to find that such a grant of authority offends Article III of the constitution. Article III provides, in part that:
The judicial power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of supreme and inferior Courts, shall hold their Offices during good behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

In *Northern Pipeline Const. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 84–85, 102 S.Ct. 2858, 2878–79, 73 L.Ed.2d 598 (1982), the Supreme Court held that in enacting the 1978 Act, Congress had granted bankruptcy courts the power to exercise the "judicial power" of the United States. The Court explained that the 1978 Act vested bankruptcy judges with the "essential attributes" of judicial power. One of these "essential attributes" was the power to preside over jury trials.
Thus, if Congress has impliedly authorized bankruptcy courts to preside over jury trials, this authorization would violate Article III, which specifies that the judicial power of the United States shall be vested in Article III judges who possess all the Article III protections. *See also Granfinanciera*, 109 S.Ct. 2782 (evidencing general concern that Article III requires the Supreme Court to prevent Congress from conferring too much power upon non-Article III tribunals).

HEREBY ORDER this matter to be withdrawn from the bankruptcy court, assigned to the District Court and pursuant to General Order 224–D, randomly assigned to a district court judge for all further proceedings.