### In re PALOMAR ELECTRIC SUPPLY, INC., Debtor.

**Harold S. TAXEL, Trustee of the Chapter 7 Estate of Palomar Electric Supply, Inc., Plaintiff,**

**v.**

**MARINE MIDLAND BUSINESS LOANS, INC., a Delaware corporation; Torwest Acquisition Corporation, a Delaware corporation; Richard Torre; John Pouk; Robert Johnson; C.L. Douglass; Elizabeth Schroeder; Wilson B. Hart; Friedmann, Keto & Fingal, a law partnership; and K.C. Wright, dba Business Search, Defendants.**

No. 92–485–GT.
Bankruptcy Nos. 88–06317–B7, 91–90551–M7.

United States District Court, S.D. California.

April 1, 1992.

**960**

James P. Hill, Susan E.H. Ragsdale, Sharon L. Rhodes, Sullivan, Hill, Lewin & Markham, San Diego, Cal., for plaintiff.

Victor A. Vilaplana, Christopher J. Smart, Sheppard, Mullin, Richter & Hampton, San Diego, Cal., for defendant Marine Midland Business Loans, Inc.

## MEMORANDUM OPINION AND ORDER REGARDING MOTION FOR WITHDRAWAL OF REFERENCE

GORDON THOMPSON, Jr., District Judge.

### FACTUAL BACKGROUND

This case arises out of the leveraged buy-out of all of the stock of Palomar Electric Supply, Inc. ("Palomar") by Torwest Acquisition Corporation ("Torwest") on January 30, 1988. It is alleged that Marine Midland, one of the defendants and the moving party, directly participated in a common plan or design to commit tortious acts and in the leveraged buy-out by which former shareholders of the debtor sold all their shares in Palomar to Torwest. This transaction was structured so that the purchasing shareholder, Torwest, financed its obligation to pay for the selling shareholders' shares by taking a lien against the assets of Palomar as security for the loan from Marine Midland rather than by taking a lien against the stock which was the subject of the transaction. Subsequently, Marine Midland foreclosed on its security interest in Palomar's hard assets (or accepted all of Palomar's remaining hard assets in lieu of foreclosure), leading Palomar to claim that it received less than fair consideration in the leveraged buy-out and that it was left without sufficient capitalization or resources needed to sustain its business to the detriment of its then existing and future creditors.

Harold S. Taxel, plaintiff and duly appointed trustee, initiated this adversary proceeding. The complaint alleges that:

1. Midland received certain preferential and fraudulent transfers (causes of action one through six);

2. Midland is liable for an unlawful distribution to shareholders, a breach of fiduciary duty, and aiding and abetting such breach (causes of action seven through nine); and

3. Midland's claim arising from this adversary proceeding must be equitably subordinated to the existing claims against the estate (cause of action ten).

Midland denied the pertinent allegations, requested a jury trial under the Seventh Amendment, and then filed a motion in the Bankruptcy Court to dismiss the complaint on the grounds that the bankruptcy court judge was not constitutionally or statutorily authorized to conduct a jury trial. On November 18, 1991, Judge Peter W. Bowie of the Bankruptcy Court of the Southern District of California held that the bankruptcy court could not entertain a jury trial. However, Judge Bowie did not dismiss the case. Instead, he ordered that a motion for withdrawal of reference be filed with the district court. On January 3, 1992, plaintiff Harold S. Taxel followed Judge Bowie's instructions, and lodged

with the Clerk's Office of the Southern District of California a Motion for Withdrawal of Reference of Adversary Proceeding for Avoidance of Preferential and Fraudulent Transfers.

After this motion was assigned to this Court, this Court obtained the file on this case from the Bankruptcy Court's Clerk's Office, as prior documents filed by the parties had thoroughly briefed the issues presented in this motion. The Court has fully considered this matter, including review of the papers filed by the parties, the authorities cited therein, and the arguments presented.

## CONCLUSIONS OF LAW

The parties do not appear to contest that the first six causes of action fall under the category of claims typically classified as "core" proceedings, while the causes of action seven through nine are "non-core" proceedings. The court agrees with these classifications, and turns to the significant issue, namely whether these causes of action can and should remain in the bankruptcy court.[1]

### I

### NON–CORE PROCEEDINGS: Bankruptcy Court Judges Do Not Have The Constitutional Authority To Conduct Jury Trials

■ The Ninth Circuit has held that jury trials in the bankruptcy court in "non-core" matters are unconstitutional. See In re Cinematronics, 916 F.2d 1444, 1451 (9th Cir.1990). The court finds that the defendant has not waived its right to a jury trial and has made a demand for a jury trial as to the non-core causes of action. As a result, causes of action seven through nine cannot be tried in the bankruptcy court and will be withdrawn to the district court.

### II

### CORE PROCEEDINGS: Bankruptcy Court Judges Do Not Have The Statutory Authority To Conduct Jury Trials

■ It should first be noted that the court's withdrawal of the non-core causes of action does not require the court to withdraw the core causes of action. Indeed, the preference of the court would be that the bankruptcy court, given its experience in the subject matter, would resolve as much of this case as it can. Thus, the court will examine the remaining question of whether bankruptcy courts have the statutory and constitutional authority to conduct jury trials in core proceedings.

### A. STATUTORY AUTHORITY

■ The three circuit courts that have addressed the question of whether bankruptcy courts have the authority to conduct jury trials in core proceedings have arrived at different conclusions. Compare In re Ben Cooper, 896 F.2d 1394, 1402 (2d Cir. 1990) (holding Congress implicitly granted bankruptcy judges with power to preside over jury trials) with In re United Missouri Bank of Kansas City, N.A., 901 F.2d 1449, 1454–56 (8th Cir.1990) (bankruptcy judge does not have statutory authority to conduct jury trial); In re Kaiser Steel Corp., 911 F.2d 380, 391 (10th Cir.1990) (agreeing with Eighth Circuit). Although the Ninth Circuit has held that jury trials in bankruptcy courts in "non-core" matters are unconstitutional, see In re Cinematronics, 916 F.2d 1444, 1451 (9th Cir.1990), the Ninth Circuit has not yet addressed the issue of jury trials in bankruptcy courts in "core" proceedings. The issue, however, has been addressed by many district court

---

1. Although defendant acknowledges that the first six causes of action would be "core" claims under the current definitions, defendant argues that because defendant is entitled to a jury to resolve the factual issues presented in these core claims, and because the bankruptcy judge has been instructed to conduct the proceedings in these core claims yet lacks the statutory and constitutional authority to do so, these claims must not be core claims. The court rejects this argument, however, as it fails to prove that the designation of these claims as core is unconstitutional. If the designation of these claims as core is unconstitutional, it is because the delegation of these claims to the Bankruptcy Court violates Article III, see infra, not because of a violation of the Seventh Amendment.

and bankruptcy court judges within the Ninth Circuit, where a split between the judges has occurred. *Compare In re Transcon*, 121 B.R. 837, 844 (C.D.Cal.1990) (no statutory authority) *with In re Interbank Mortg. Corp.*, 128 B.R. 269, 272–73 (N.D.Cal.1991) (statutory and constitutional authority); *In re Rheuban*, 128 B.R. 551, 566 (C.D.Cal.1991) (bankruptcy court) (constitutional authority); *In re Marshland Development, Inc.*, 129 B.R. 626, 629 (Bkrtcy. N.D.Cal.1991); *In re Great American Mfg. and Sales, Inc.*, 129 B.R. 633, 635 (C.D.Cal. 1991) (statutory and constitutional authority).

### 1. *Explicit Authority*

Even in the leading case for the proposition that bankruptcy courts have the statutory authority to conduct jury trials in core proceedings, the Second Circuit in *In re Ben Cooper* held that there was no express authority for bankruptcy courts to conduct jury trials. *See* 896 F.2d at 1402. As a result, the statutory authority, if it exists, must be implicit. After a careful review of the statute, the statute's legislative history, and the cases interpreting this issue, the Court is of the opinion that such authority is not implied.

### 2. *Implicit Authority*

The Second Circuit in *In re Ben Cooper, Inc.* held that bankruptcy judges had the implicit authority to conduct jury trials. 896 F.2d at 1402. The court based its decision on two provisions of the Bankruptcy Code:

(a) 28 U.S.C. § 151, which states that bankruptcy judges "may exercise the authority conferred under this chapter with respect to any action, suit or proceeding" and

(b) 28 U.S.C. § 157(b), which gives bankruptcy judges the authority to conduct trials and issue final orders in core proceedings.

*Id.* The court reasoned from these provisions that Congress had given bankruptcy judges the power to handle all matters regarding core proceedings. As a result, if the core proceedings required a jury trial,

the bankruptcy judge, under this broad grant of power, could conduct the jury trial.

Much more persuasive to this Court, however, is the reasoning of the Eighth and Tenth Circuits. *See In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449, 1454–56 (8th Cir.1990); *In re Kaiser Steel Corp.*, 911 F.2d 380, 391 (10th Cir. 1990). The Court will refrain from repeating all of these arguments, and refers additionally to the thorough analysis in *In re Transcon*, 121 B.R. 837 (C.D.Cal.1990). In reaching the conclusion that bankruptcy judges do not have the statutory authority to conduct jury trials, this Court is struck by the fact that it is most likely that Congress did not consider the possibility of jury trials in core proceedings. This alone would not stop this Court from finding such an authority implicit in the statute if the authority were necessary to make the legislation effective. *See* 2A Sutherland Stat.Const. § 5504 (1984). However, it would appear that Congress' intent, and probably its belief following the enactment of the legislation, was that its definition of core proceedings would not allow for Constitutionally mandated jury trials. Viewed in this light, it is clear that Congress' intent was not to give bankruptcy judges the authority to do all that was necessary in "core" proceedings; instead, Congress' intent was to define "core" proceedings in a manner that would not require jury trials. As a result, the creation of statutory authority not explicit in the statute would actually be contrary to the intent behind the legislation, and certainly cannot be viewed as necessary to make this legislation effective.

In addressing this issue in the Eastern District of Pennsylvania, the Honorable Louis H. Pollack reasoned:

[I]t strikes me that the responsible course for the judiciary to take with respect to an issue which Congress didn't look at, but which must be resolved, is to resolve that issue along the lines that to the judiciary makes the most sense as a matter of judicial administration, given the predicate, which seems indisputable,

that Congress has offered no direction one way or another.

... [T]he responsible course is for the judiciary not to ask impossible questions about the intention of legislators who really had no intention, but to ask questions which go to what makes for sound management of the bankruptcy process, a process committed by Congress to the judicial branch.

What is the sensible way to resolve this matter in terms of policy? Is it sensible to have the bulk of the aspects of the bankruptcy process committed to bankruptcy judges, but with transfer to a district court of those claims that require jury treatment? On the face of it, that does not sound like an efficient use of the time either of bankruptcy courts or district courts.

*In re Jackson*, 118 B.R. 243, 252 (E.D.Pa. 1990). Although this court is in agreement with Judge Pollack that it would be preferable for all core proceedings to be tried before the bankruptcy court, that decision is more appropriately left to Congress. Although some commentators will argue that not finding the statutory authority for jury trials reads a restriction into the statute that Congress did not place there, *see* Gibson, "Jury Trials and Core Proceedings: The Bankruptcy Judge's Uncertain Authority," 65 Am.Bank.L.J. 143, 158 (1991) (arguing that the Eighth and Tenth Circuits reversed the burden of persuasion), the present legislation does not indicate that Congress has taken the steps necessary to empower bankruptcy courts to conduct

jury trials. And indeed, Congress must take such action. "Unlike an Article III court, a bankruptcy court has no inherent powers: 'congress vests bankruptcy courts with their jurisdiction and their authority has no "inherent" source.' " *In re Transcon Lines*, 121 B.R. at 840. It necessarily follows that bankruptcy court judges cannot conduct jury trials in core proceedings unless they have a statutory basis for such authority. As a result, it is improper to suggest that failure to create a power which is not in the statute alters or distorts the burden of persuasion. Instead, the presumption must be that the power does not exist, and burden must be on the party attempting to prove that it does. Thus, as sensible as it might be from a practical standpoint to give bankruptcy judges the statutory authority to conduct jury trials, this Court must refrain from reading into the statute a power that does not exist.

## B. CONSTITUTIONAL AUTHORITY

Because the court holds that bankruptcy court judges lack the statutory authority to preside over a jury trial in core proceedings, it is unnecessary to reach the constitutional issues, which present themselves in the form of two questions: (a) whether a bankruptcy court judge may preside over a jury trial in core proceedings without the consent of the parties without violating the Seventh Amendment, and (b) whether the bankruptcy court's power to enter final judgments in core proceedings violates Article III.[2]

---

**2.** Although the court does not address the constitutional issues, the arguments that address the second constitutional question are briefly set forth because they reinforce the decision to withdraw the reference of this proceeding. Significantly, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), appears to have altered the Article III analysis set forth in *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) and *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). *See also* Gibson, "Jury Trials and Core Proceedings: The Bankruptcy Judge's Uncertain Authority," 65 Am.Bank.L.J. 143, 171–75 (1991). Indeed, after *Granfinanciera*, it is not safe to assume that the present core jurisdictional scheme is valid, even when no jury trial is demanded. *See*

Gibson, *supra* at 167. *But see In re Ben Cooper*, 896 F.2d 1394 (2d Cir.1990) (assuming, albeit without analysis of the issue of public versus private rights, that the current statutory scheme for core proceedings is constitutional in the non-jury trial context). Specifically, the Court stated that "if a statutory cause of action, such as [the] right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2), is not a 'public right' for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking 'the essential attributes of the judicial power.' " *Granfinanciera*, 492 U.S. at 53, 109 S.Ct. at 2796 (*citing Crowell v. Benson*, 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932)).

As the fourth cause of action alleged a fraudulent conveyance, it is possible that this cause of

## CONCLUSION

Cognizant of the disagreement between the circuit courts and the lack of guidance in the Ninth Circuit on the question of the statutory authority for bankruptcy courts to preside over jury trials, Judge Hupp of the Central District of California commented: "The public interest is that there be a definitive [Ninth Circuit] Court of Appeals decision as soon as feasible." *In re Great American Mfg. and Sales, Inc.*, 129 B.R. at 635–36. In a similar vein, Judge Zurzolo of the Bankruptcy Court of the Central District of California stated:

> "[B]ankruptcy judges, district judges and circuit judges are expending a disproportionate share of their limited judicial resources in considering and deciding the[se] issues.... This has a deleterious impact on the courts, lawyers, and those millions of citizens whose lives are affected by the bankruptcy court system. What is required is a definitive solution from the Court or the Congress before we revisit the chaos that engulfed the bankruptcy system in the wake of *[Northern Pipeline Construction Co. v.] Marathon [Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ].

*In re Rheuban*, 128 B.R. at 567. This court similarly urges the Ninth Circuit to resolve the jury trial issue.

The court holds that bankruptcy courts are not statutorily authorized to conduct jury trials in core proceedings. In non-core proceedings, the lack of statutory authority to conduct jury trials applies as well; however, the Ninth Circuit's pronouncement in *In re Cinematronics*, 916 F.2d 1444 (9th Cir.1990), that jury trials in non-core proceedings in bankruptcy courts violate the Seventh Amendment, resolves this issue.

Accordingly, the Court holds that the bankruptcy court cannot preside over any of the causes of action that require a jury trial. Because the bankruptcy court cannot preside over these causes of action, the court finds cause for withdrawal of reference. Additionally, as it appears to this court that the motion to dismiss the tenth cause of action is still pending, the court withdraws the reference as to this cause of action as well.

IT IS HEREBY ORDERED that the Motion for Withdrawal of Reference is GRANTED. This case should immediately be assigned a district court case number.

IT IS SO ORDERED.

action is not appropriate before a non-Article III judge, regardless of whether a jury demand is made. *See id.* at 71 n. 2, 109 S.Ct. at 2806 n. 2 (White, J., dissenting) ("the Court is rather coy about disclosing which federal statute it is invalidating today. Perhaps it is ... the statute which includes actions to avoid or recover fraudulent conveyances among core proceedings; or [the statute] which permits bankruptcy judges to enter final judgments in core proceedings (given the inclusion of fraudulent conveyance actions among these proceedings)"). *See also* Gibson, *supra*, at 169 n. 179 (suggesting that after *Granfinanciera*, the inclusion of preference actions within the scope of core proceedings, such as those in causes of action one through three of this complaint, are also constitutionally suspect).

The implications of these and other comments made by the Court in *Granfinanciera* are serious and may require a complete overhaul of the bankruptcy court system. Some possibilities are that a more narrow definition of core proceedings may be required, that Congress may have to staff bankruptcy courts with Article III judges, or that the scope of bankruptcy court's jurisdiction will be limited to those situations in which the parties consent to bankruptcy court jurisdiction. Thus, while the court does not reach this constitutional issue, it too would appear to require, under existing Supreme Court jurisprudence, withdrawal of reference of the entire complaint.